THE STATE, Defendant in Error, v. OSCAR RALPH ASHWORTH, Plaintiff in Error.—143 S. W. (2d) 279.

Division Two, September 27, 1940.

*Abe Goldman, Leonard Johnson* and *Earl Borchers* for plaintiff in error.

*Roy McKittrick*, Attorney General, and *Robert L. Hyder*, Assistant Attorney General, for defendant in error.

LEEDY, J.—This is a capital case which, on account of diversity of opinion as to its proper disposition, came to the writer on re-assignment at our last conference. Plaintiff in error, Oscar Ralph Ashworth, was charged by information in the Circuit Court of Buchanan County with the crime of kidnaping, as denounced by Sec. 4020, R. S. 1929 (Sec. 4020, Mo. Stat. Ann., p. 2827). Upon his plea of guilty, on formal arraignment, his punishment was assessed by the court at the extreme penalty. Sentence was pronounced and judgment entered accordingly, and he brings error. For convenience, the parties will be referred to as they were styled in the circuit court.

Preliminary to an examination of the merits, it becomes necessary to notice a question of appellate practice in reference to the matters presented for review by the transcript of the record as certified here in obedience to the command of our writ. Defendant was sentenced on September 1, 1938, which was during the May Term. He filed no motion for a new trial, but on November 4 following, sued out of this court a writ of error, which was returnable at our May, 1939, term. Notice of the issuance thereof was served on the State March 10, 1939. Thereafter, on April 10, 1939, at the January, 1939, term of the Buchanan Circuit Court, he went into that court and filed what is captioned as a "Writ of error *coram nobis*," the prayer of which was that "the court allow him to withdraw his plea of guilty" for the reasons therein assigned. This was denied for the reason, among others, that the trial court was without jurisdiction because defendant had theretofore sued out his writ of error. Whereupon defendant filed a motion for new trial or rehearing as to the proceedings by error *coram nobis*, which was overruled, and he *appealed*, not from the judgment denying his application for error *coram nobis*, or motion in the nature thereof, but "from the judgment, order and de-

cision of the court *overruling defendant's motion for new trial* as to defendant's motion for writ of error *coram nobis.*" (Italics ours.)

The foregoing appears from the transcript which was filed here April 26, 1939. The cause was docketed for hearing at the September Term, 1939, but on July 8 the Attorney General filed suggestion of diminution of record, alleging that the following further proceedings, not shown by the transcript, were had, to-wit:

"Be it remembered That, on the 1st day of September, A. D. 1938, the same being a day of the regular May, 1938, Term of the aforesaid Circuit Court, the above entitled cause coming on regularly for hearing before Hon. Ferd J. Frankenhoff, Judge of Division No. 3 of the aforesaid Circuit Court, the following proceedings were had and done therein.

"Mr. Maurice F. Hoffman, Prosecuting Attorney for Buchanan County, Missouri, and Messrs. Orville Powell and Ernest Binnicker, Assistants, appeared for and on behalf of the State.

"Judge Joseph A. Sherman appeared for and on behalf of the Defendant. . . .

"The COURT: Stand up, Mr. Ashworth. Read the information to Mr. Ashworth.

"Thereupon Mr. Powell read to the defendant the information.

"The COURT: What is your plea, Mr. Ashworth, guilty or not guilty?

"The DEFENDANT: Guilty.

"The COURT: Any statement, Judge Sherman?

"Judge SHERMAN—Just this—I am not here to defend this man for this crime he has committed here. Nine years ago, when I was admitted to the bar, I took an oath that whenever called upon by the court to represent any person or perform any duty for the court, I would do it. I have been appointed by this court to advise this man of his legal right of which I am acquainted that he might use in his behalf. After having done so, he informs me of his desire to enter a plea of guilty to this crime. I have informed him that the punishment which might be assessed ranges from five years to life, or death in the lethal gas chamber.

"The COURT: Mr. Powell, have you any statement?

"Mr. POWELL: We have no statement to make.

"The COURT: Mr. Ashworth, have you some statement to make at the time?

"The DEFENDANT: I have suffered more from this crime than I ever did from anything, and all I can do is just beg the court for mercy.

"The COURT: Have you ever been in trouble before?

"The DEFENDANT: Yes sir.

"The COURT: Where?

"The DEFENDANT: Jefferson City and Nebraska.

"The COURT: Were you confined to the penitentiary in Jefferson City, Missouri?

"The DEFENDANT: Yes, sir.

"The COURT: For what offense?

"The DEFENDANT: Stealing a hog.

"The COURT: In what county did this occur?

"The DEFENDANT: Atchison County.

"The COURT: What year was that?

"The DEFENDANT: 1920.

"The COURT: How old are you now?

"The DEFENDANT: 37.

"The COURT: Then what was your next trouble?

"The DEFENDANT: Nebraska City.

"The COURT: Nebraska City, Nebraska?

"The DEFENDANT: Yes, sir.

"The COURT: What was the nature of that offense?

"The DEFENDANT: Rape.

"The COURT: What was the punishment?

"The DEFENDANT: 10 years.

"The COURT: What was the age of the prosecuting witness, that is, the girl?

"The DEFENDANT: Well, I just don't remember now.

"The COURT: Well, about?

"The DEFENDANT: 12 or 13.

"The COURT: Any other trouble?

"The DEFENDANT: No, sir.

"The COURT: No other convictions anywhere in the years?

"The DEFENDANT: No, sir, no other convictions.

"The COURT: Are you married?

"The DEFENDANT: I am married, got three little children.

"The COURT: How old are they?

"The DEFENDANT: 4, 2 and 8 months.

"The COURT: Judge Sherman, who was appointed by the court to represent you as your counsel, has informed you as to the range of penalty covering the offense. You understand that the range is from five years to life imprisonment, or at death, you understand that, do you?

"The DEFENDANT: Yes, sir.

"THE COURT: You have pled guilty to this charge of kidnaping this little girl, who was around seven years of age, is that right?

"The DEFENDANT: Yes.

"The COURT: It seems to me that by the appointment of Judge Sherman, by your having the advice of a lawyer of his reputation to tell you your rights, that every right given to you by law and by the constitution has been followed and accorded. Any court, at times, has a duty which is not pleasant, in fact, a duty which is at times

terrible. I do think of your wife and children. I must think also of the community, and my duty to the community under my oath. Merciful, perhaps I have been to a degree, but in this case I can see no mitigating circumstances upon which to extend the slightest mercy. Unless some example is given which will deter others in the commission of crimes as heinous as this one, there is not much occasion to continue with the courts; there is not much occasion to continue with the law. Not only once, in the case of an eleven or twelve year old girl, have you been guilty of this heinous offense, in which, no doubt, you ruined the life of one little girl, but lo, and behold, within a year or two after you are released from the Nebraska state penitentiary, you come back to Missouri, and there, not content with what you have already done to an eleven year old girl, you now attack one seven years old. There is ample knowledge, from your confession alone (referring to the written confession of the defendant which was before the court, in which he admitted the kidnapping and an assault on the child, Aneita Root), that you are guilty of something further than that which is charged in this information. No matter how terrible the duty may be, no matter how unpleasant it may be to this court, it is the duty which this court cannot avoid. Mercy? Yes. But what about mercy to other children seven, eight, ten and twelve years old! Oscar Ralph Ashworth, this court assesses your punishment at death by the administration of lethal gas in the lethal gas chamber within the walls of the state penitentiary at Jefferson City, Missouri. Said execution to be by the warden, under his supervision and direction. May God help your soul.''

█ Upon a consideration of said suggestions, certiorari was ordered ''directing the circuit court to send up true copy of part of record designated in suggestions.'' Thereafter on November 25, 1939, the circuit clerk sent up a second transcript embodying all that came up in the first, as well as the matter contained in the State's suggestions in diminution and set forth above. This second transcript was certified under the hand and seal of the clerk as a ''full, true and complete copy of the *bill of exceptions* as signed by the judge of Division Number Three.'' But both transcripts contained certain extraneous matter (because not part of the record proper, nor shown to have been introduced in evidence, or otherwise properly a part of a bill of exceptions in any case), such as copies of depositions taken in another and different criminal case pending in Andrew County wherein we infer defendant was charged with rape upon the same little girl whom he is charged in the instant case with having kidnaped. The State filed a motion to strike from the transcript all that portion relating to the proceedings by writ of error *coram nobis* together with the depositions above referred to. This motion was ordered taken with the case. We are of the opinion that the motion should be sustained. In the first place, the pendency of the case in this court

on writ of error operated to divest the trial court of jurisdiction, and transferred the same to this court. "The general rule is universally recognized that a duly perfected appeal or writ of error divests the trial court of further jurisdiction of the cause in which the appeal has been taken. The jurisdiction over the action is transferred to the appellate court." [3 Am. Jur., Appeal & Error, sec. 528. See, also, Burgess v. O'Donoghue, 90 Mo. 299; 2 Mo. Digest, p. 599, sec. 436; France v. Superior Court (Cal.), 255 Pac. 815, and annotated on an anologous question in 52 A. L. R. 869-878.] This rule is subject to the qualification that the divesture goes only as to matters necessarily involved in the review proceedings. [Ibid., sec. 531.] It is manifest that this qualification of the rule did not aid defendant, inasmuch as the judgment of conviction, on confession, was not only necessarily involved in, but the very essence of, the review proceedings brought by him, by ordinary writ of error.

If viewed from the standpoint that the writ of error *coram nobis* is in the nature of a new suit to revoke and annul the former judgment—which, it would seem, is true (2 R. C. L., pp. 309-310; see, also, State ex rel. Wilkerson v. Kelly, J., 346 Mo. 416, 142 S. W. (2d) 27)—the proceedings thereon would have no place in the record on an ordinary writ of error previously sued out, as here, to review a supposed error in law apparent on the record. Defendant must have entertained this view inasmuch as he undertook to *appeal* when relief under the error *coram nobis* proceedings was denied. It is elementary that the remedies of error and appeal may not be prosecuted simultaneously. [State v. Thompson, 30 Mo. App. 503.]

█ Having eliminated from our consideration that part of the record complained of by the State in its motion to strike, we pass to a consideration of a similar question affecting the extent of our review which raises itself in connection with that part of the record certified here by certiorari on the State's suggestion in diminution of record. Our statute, Sec. 3736, R. S. '29 (Sec. 3736, Mo. Stat. Ann., p. 3283), has abolished motions in arrest in criminal cases, but it provides that "all the rights which heretofore could have been saved by the defendants in a motion in arrest, and which have not been waived by failure to make timely objections, may be saved in the motion for a new trial." Before the enactment of that section, it was uniformly held that writs of error lie to correct errors apparent on the record even though no motion in arrest was filed in the circuit court. [State v. Kelley, 206 Mo. 685, 105 S. W. 606, and cases cited.] The rule remains the same under the statute, and it has found frequent application in review proceedings, either by error or appeal, in cases where a defendant has entered a plea of guilty. For example, if no crime is charged in the indictment or information, none is confessed by pleading guilty thereto, and the effect of such a plea amounts only to an admission by record of the truth of whatever is sufficiently urged in the

charge, and will not prevent the defendant from taking advantage of the defects apparent of record. [1 Bishop, Crim. Pro., 795; State v. Levy, 119 Mo. 434, 24 S. W. 1026, and cases cited; State v. Conley (Mo.), 123 S. W. (2d) 103.] In all such cases the review is limited to the record proper. The motion for new trial is the repository of all matters of exception. In the instant case no motion for new trial having been filed, there was no foundation for a bill of exceptions, and under such circumstances, it fills no office. It follows, therefore, certiorari was improvidently awarded to bring up the matter referred to in the State's suggestion in diminution of record, and we are not at liberty to consider it. If it be contended that what is shown thereby amounts to allocution, it is not properly before us because not shown by the record proper.

■ As the case is before us on the record proper, it must be treated and disposed of accordingly. The information is challenged in two respects: First, that it is void because not concluding with the words "against the peace and dignity of the State;" second, because it "was not explicit enough to properly apprise defendant of the offense with which he was charged and the penalty thereof."

The information is as follows (omitting caption and jurat):

"MAURICE HOFFMAN, Prosecuting Attorney within and for Buchanan County, in the State of Missouri, upon information and belief, and upon his official oath, informs the Circuit Court of Buchanan County that on or about the 21st day of August, 1938, at said County Oscar Ralph Ashworth, did then and there willfully, unlawfully and feloniously, and without lawful authority seize, confine, inveigle, decoy, kidnap and abduct and take and carry away by the means of and by the use of force and violence, a child of the age of seven years, to-wit, One Aneita Root and did then and there cause the said Aneita Root to be secretly confined against her will; contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State, and contrary to Section No. 4020, R. S. 1929.

"MAURICE HOFFMAN,
"Prosecuting Attorney of
Buchanan County, Mo."

As to the first ground of attack, it is true that Art. VI, Section 38, of the Constitution of Missouri does provide that ". . . all indictments shall conclude, 'against the peace and dignity of the State.'" In State v. Adkins 284 Mo. 680, 225 S. W. 981, it was held that in matters of this kind, literal compliance with the words of the Constitution, even in criminal cases, is not required; and that with respect to the foregoing clause, all that is required or necessary is a substantial compliance. The addition of the offending words "and contrary to Section No. 4020, R. S. 1929" following the words "against the peace and dignity of the State" does not render the information bad,

as those words may be rejected as surplusage. Such was our holding even before the Adkins case. [State v. Schloss, 93 Mo. 361, 6 S. W. 244.]

No authorities are cited to sustain the novel proposition urged that an information is required to apprise the defendant of the penalty. We dismiss the contention as being without substance. The information has been set out. An extended discussion of it is deemed unnecessary. It will be observed that it follows the language of the statute, and under our holdings in State v. Rosegrant, 338 Mo. 1153, 93 S. W. (2d) 961, and cases cited therein, we think its sufficiency is not open to question.

Defendant's plea of guilty, and pronouncement of sentence and judgment thereon, as shown by the record proper, is as follows:

"And comes also the defendant, Oscar Ralph Ashworth, in person; and it appearing to the court that the defendant is without counsel, the court here now appoints Joseph A. Sherman as counsel for said defendant; whereupon defendant, on formal arraignment, enters plea of guilty to kidnapping under Section 4020, R. S. 1929, as charged in the information, and his punishment is by the court assessed at death by the administration of lethal gas, in the lethal gas chamber within the walls of the Missouri State Penitentiary, at Jefferson City, Missouri, on the 14th day of October, 1938, under the supervision and direction of the Warden of said Missouri State Penitentiary.

"IT IS THEREFORE sentenced, ordered and adjudged by the court that the defendant, Oscar Ralph Ashworth, having pleaded guilty as aforesaid, be delivered to the said Warden of said Missouri State Penitentiary, at Jefferson City, Missouri, by the Sheriff of Buchanan County, Missouri, immediately or within ten days of this date of Judgement for execution on the 14th day of October, 1938."

Thus we are brought to the question as to which there has been diversity of opinion among us, i. e., whether the court is required to accord allocution to a defendant upon his plea of guilty. The defendant in his brief raises the point in this way: "The court did not inquire into the facts to ascertain if any legal reason existed against the execution of the sentence." The only authorities cited in support of this contention are Sec. 3721, Laws, 1937, p. 222, and State v. Broyles, 340 Mo. 962, 104 S. W. (2d) 270. An examination of the statute relied on discloses that it has no application whatsoever to the situation at hand. On the contrary, it merely specifies the procedure to be followed on return of a writ of *habeas corpus*, as provided by Sec. 3720, where a previously imposed sentence of death shall not have been executed. The case of State v. Broyles, supra, wherein defendant was tried before a jury, is not in point as we shall presently notice.

Our statute with respect to allocution, being Sec. 3713, R. S. '29

(Sec. 3713, Mo. Stat. Ann., p. 3263), provides: "When the defendant appears for judgment, he must be informed by the court of the verdict of the jury, and asked whether he has any legal cause to show why judgment should be pronounced against him; and if no such sufficient cause be shown against it, the court must render the proper judgment." We have consistently held that allocution, under the foregoing statute, is required only after conviction upon a trial by jury, and does not apply to a sentence pronounced on a plea of guilty. [State v. Borchert, 312 Mo. 477, 279 S. W. 72; State v. Rogers (Mo.), 285 S. W. 976. See, also, State v. Branson (Mo.), 262 S. W. 365.] In the Rogers case the court said: "*By the very terms of the statute, such allocution is required only after the accused has been tried and found guilty by a jury.*" (Italics ours.)

The common law of England in modified form is in force in this jurisdiction to the extent declared by Sec. 645, R. S. '29 (Sec. 645, Mo. Stat. Ann., p. 4894). It may be conceded that at common law in capital cases it was indispensably necessary that a defendant should be asked before sentence if he had anything to say why sentence of death should not be pronounced against him. [8 R. C. L., p. 235.] But this rule, in large part, has been either superseded by statute in this country, or rejected as not applicable to conditions here. The latter seems to be true in such jurisdictions as Pennsylvania, Connecticut, New Jersey, North Carolina, Maryland, and perhaps others. [See Commonwealth v. Senauskas (Pa.), 194 Atl. 646, 113 A. L. R. 814, to which is appended an exhaustive annotation, 1. c. 821.]

In the Senauskas case, supra, it was said:

"The rule of the common law as to the right of the prisoner to be asked whether he had anything to say why judgment should not be awarded against him or, to put it another way, why sentence of death should not be pronounced against him, does not now possess the inflexibility it did in an earlier day. At common law the rule served a purpose that could not be served in any other way. It gave a prisoner in a capital case 'an opportunity to allege any ground of arrest, or to plead a pardon, if he had obtained one, or to urge any other legal objection to further proceedings against him.' [Schwab v. Berggren, 143 U. S. 442, 446, 12 Sup. Ct. 525, 526, 36 L. Ed. 218.] Putting this question to the prisoner gave him his last opportunity to speak to some one with power to save him from his impending doom. To deprive him of this last opportunity was a serious invasion of his rights, for at common law the defendant in cases of felony was not accorded the privilege of counsel nor could he take any appeal to a higher court. A sentence of death in Pennsylvania has no such irrevocability about it as it had at common law. Anything Senauskas could have said before sentence was imposed, he could by himself or his counsel have said since with equal effect, either to Judge Arird, Judge Brownson, or to this court.

"Modern criminal procedure has thus taken away this rule's raison d'être, and it is an honored maxim of the law that 'cessante ratione legis cessat, et ipsa lex.' However, the practice of propounding to a prisoner in a capital case the above-stated question has been long followed, and since, as Chief Justice Gibson once said (Hamilton v. Com., 16 Pa. 129, 134), 'forms of records are deeply seated in the foundations of the law,' careful judges will continue to make in such cases this ancient inquiry in unequivocal language. Failure to do so will constitute reversible error only when it is shown that the prisoner has been thereby prejudiced."

In State v. Hoyt, 47 Conn. 518, 36 Am. Rep. 89, the court said:

"Anciently in England a person on trial for a felony was not allowed counsel. The presiding judge in theory was his counsel, but did not represent the accused in the sense that counsel do with us. If, therefore, the judge omitted anything which was the right or privilege of the accused, it was considered the act of the court, which could in no wise prejudice the prisoner, and the rights of the latter could not be waived as may now be done. If we compare the rules and practice that obtained in England with our own, it will readily be suggested that the reasons that made the inquiry of the prisoner so essential do not apply at all in this state. Here the accused has always had counsel to represent him, vigilant to guard every right and claim every privilege deemed essential to his deliverance. The counsel well know that the verdict does not conclude the prisoner—they know all the remedies for ulterior relief and when and how they must be instituted. They are present when the prisoner, on motion of the attorney for the state, is set at the bar to receive his sentence. They know that the court is open to hear any request, motion, or objection, and that if the accused desires to say anything the court will grant him the privilege if he or they should so indicate. Under our practice what possible harm can be occasioned to the prisoner by such an omission on the part of the court? He can have no pardon to plead, for that can only come from the legislature after sentence, no attainder to save, no benefit of clergy to pray for."

To the same effect is Warner v. State, 56 N. J. L. 686, 29 Atl. 505, 44 Am. St. Rep. 415, as follows:

"Under the condition of affairs existing in this state, however, the reason for the form has entirely disappeared. The defendant is represented by counsel who needs no invitation to interpose any legal objection at any stage of the proceedings. Counsel know the occasion when it is proper to assert the rights of the defendant, and so the query of the court, whether regarded as an instruction to the defendant as to his rights, or as an invitation to assert them, is an unmeaning ceremony. In the present case it would have been ridiculously idle, for it appears that, after the rendition of the verdict, a rule to show cause why a new trial should not be granted was moved for upon

grounds submitted to the court by defendant's counsel. . . . Where a defendant is represented by counsel, there exists no reason whatever for the inquiry, and the law requiring it should cease with the reason. The best-considered cases in this country adopt the view that where the defendant is represented by counsel, and especially where he has moved for a new trial, the interrogatory is unnecessary.''

We have found no English cases where the omission of allocution alone is held fatal except in cases of high treason, of which there appear to be three involving pleas of guilty. [Rex v. Geary, 2 Salk. 630, 91 Reprint 532; Rex v. Speke, 3 Salk. 358, 91 Reprint 872; Anonymous, 3 Mod. 265.] But as pointed out above, at that time the accused was not allowed counsel, could not appeal; and suffered attainder as a consequence of such a sentence.

We need not pause to consider whether we would be authorized to determine if the reasons for the English rules and practice as to this form are applicable here, for the reason we think our statute (Sec. 3713, supra), which came into the body of our law in the Revised Statutes of 1879, as Sec. 1939 thereof, is decisive of the question. It will be observed that allocution as therein provided is extended to cases of misdemeanor (although by Sec. 3714 it is declared to be merely directory in those instances) and is made applicable only in cases of conviction by a jury, as we have held. This clearly constituted a revision of the whole subject-matter, and evinces an intent on the part of the Legislature to substitute the statute for the common law rule in that behalf. As a sentence on a plea of guilty is not within the statute, it follows that allocution was not required in the case at bar.

Other assignments, grave in their nature, have been briefed, but for the reasons above pointed out respecting the scope of our review on the record before us, we are precluded from examining into them. Whether the questions thus sought to be adjudicated may yet be reached by another remedy is a matter upon which we are not called to pass. [But see Powell v. Alabama, 287 U. S. 45, 77 L. Ed. 158, 53 Sup. Ct. 55, 84 A. L. R. 527, and Mooney v. Holohan, 294 U. S. 103, 79 L. Ed. 791, 55 Sup. Ct. 340, 98 A. L. R. 406.]

From what has been said, it follows that the judgment must be affirmed. It is so ordered. All concur. Date of execution set for October 25, 1940.