122 N.J. Super. 552 (1973)
301 A.2d 167
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHARLES RAY EBRON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 3, 1973.
Decided March 2, 1973.
*555 Before Judges LABRECQUE, KOLOVSKY and MATTHEWS.
Mrs. Martha G. Pugh argued the cause for defendant.
Mr. Michael H. Kessler, Assistant Prosecutor, argued the cause for respondent (Mr. Karl Asch, Union County Prosecutor, attorney).
*556 PER CURIAM.
Defendant Charles Ray Ebron appeals from his conviction of possession of a dangerous knife, in violation of N.J.S.A. 2A:151-41(c). He was sentenced to an indeterminate term at the Youth Reception and Correction Center, Yardville.
Defendant raises seven points which may be summarized as follows: (1) the statute, N.J.S.A. 2A:151-41(c), as applied to the facts alleged in the indictment is unconstitutional by reason of vagueness; (2) the knife in question was not a dangerous knife within the meaning of the statute; (3) defendant was prejudiced by comments on the evidence by the prosecutor and the trial judge; (4) it was error to refuse to charge defendant's requests; (5) denial of defendant's motion for acquittal was error; (6) denial of the motion for a new trial was error, and (7) error was committed in the presentencing procedure.
On June 8, 1971 a police officer looking through the front window of an ice cream store observed, as defendant leaned over the counter, that he was carrying a knife in his left hip pocket. Its handle was protruding below the bottom of his waist-level jacket. He entered the store, walked up to defendant, released the snap on the sheath in which the knife was being carried, and removed the knife from defendant's pocket. The knife was of German make and had a fixed steel blade five inches long. Defendant was not observed to remove it or handle it in any way during the incident. He testified that he had found the knife in a nearby park about a half hour before, picked it up and strapped it to his belt with the sheath in his pocket.
We find defendant's first and second points to be without merit. While a penal statute may be invalidated for vagueness if it prohibits "the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application," State v. Smith, 46 N.J. 510, 518 (1966), cert. den. 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 71 (1966), we find no such vagueness here. State v. Horton, 98 N.J. Super. 258 (App. Div. *557 1967), certif. den. 51 N.J. 393 (1968). Defendant seeks to distinguish State v. Horton on the ground that defendant in that case had been arrested for shoplifting in addition to possession of a knife. We find this to be a distinction without a difference.
It must be conceded that all knives are not per se dangerous. See Degree v. United States, 144 A.2d 547 (D.C. Mun. Ct. App. 1958). A knife may be used as a tool in certain trades, hobbies or sports. Thus, a cook or chef may carry the tools of his trade, a barber may carry a straight razor, or a hunter, a camper or a Boy Scout may have a legitimate use for a hunting knife. As we interpret the statute, it outlaws the carrying of a knife, even if it would otherwise be a useful object, where the surrounding circumstances, such as the time, place and situation under which the defendant was found in possession of it, or any alteration of the knife itself, indicate that his possession is for the purpose of using it, then or later, unlawfully against another. See State v. Edwards, 120 N.J. Super. 46 (Law Div. 1972), quoting from Scott v. United States, 243 A.2d 54 (D.C. Ct. App. 1968). Cf. State v. Horton, supra, 98 N.J. Super. at 261-262. See also The New Jersey Penal Code, Final Report of the New Jersey Criminal Law Revision Commission, vol. 1, § 2C:39-3i (1971).
Applying the test laid down in State v. Reyes, 50 N.J. 454, 458-459 (1967), we are satisfied that defendant's motions for judgment of acquittal and for arrest of judgment were properly denied. As we read defendant's brief he contends that the evidence before the jury could not support a finding that the knife in question was a "dangerous knife" within the meaning of the statute and that an element of the offense under the statute was that the weapon be "concealed." Neither contention is meritorious. Whether the weapon was a "dangerous knife" within the intendment of the statute was for the jury "based on all the facts and circumstances." Defendant, who was 18 years of age, 6 feet 7 inches tall and weighed 245 lbs., was carrying it on his *558 person after dark, at a location where a number of youths of his acquaintance were engaged in verbally harassing a police officer. He admitted he was neither a hunter nor a Boy Scout. While he had previously gone camping, he had not used this or a similar knife for camping purposes.
While concealment of the knife was a significant fact and circumstance which the jury could take into account in arriving at a determination of whether the implement was a "dangerous knife," State v. Green, 116 N.J. Super. 515, 523 (App. Div. 1971), certif. granted 60 N.J. 22 (1972), we are convinced that concealment was not a necessary element of the offense. Although the Article in which it is contained continues to be entitled "Carrying Concealed Weapons," N.J.S.A. 2A:151-41, as amended by L. 1966, c. 60 and L. 1968, c. 307, contains no language requiring that the knife be concealed. It refers to one who "carries, holds or possesses * * * on or about his clothes or person, or otherwise in his possession, or in his possession or under his control in any public place or public area" a dangerous knife. Further, even if it be assumed that concealment is a necessary element of the offense, the proofs sufficiently established that the blade of the knife was inserted in a sheath which extended into defendant's back pocket, and the handle was covered by the jacket he was wearing to such an extent that until he leaned over the counter it was not observable. See State v. Rabatin, 25 N.J. Super. 24, 30 (App. Div. 1953), certif. den. 13 N.J. 361 (1953).
Defendant, though he made no objection thereto, complains of a comment made by the trial judge in his charge, contending that the "clear implication of the remark" was that defendant, if he was in possession of the knife, must have had it for some unlawful purpose We find no error, much less plain error. We do not read the court's remark as does defendant. Further, the judge was free to comment on the evidence so long as he clearly and fairly left for the jury's determination all factual issues and ultimate questions of guilt or innocence, State v. Rudd, 49 N.J. 310, 314 *559 (1967), which he did here. See also State v. Lisena, 129 N.J.L. 569, 574 (Sup. Ct. 1943), aff'd o.b. 131 N.J.L. 39 (E. & A. 1943)
Defendant's claim of error based upon the prosecutor's inadvertent reference to the weapon defendant was carrying as a gun is clearly without substance. The prosecutor immediately recognized the error and corrected his question to indicate that he meant the knife. Defendant also challenges as error comment by the prosecutor about the harassment of the arresting officer which had been going on prior to defendant's arrest. We find the point to be without merit. Counsel is entitled to wide latitude in summation so long as he stays within the evidence and the legitimate inferences to be drawn therefrom. State v. Mayberry, 52 N.J. 413, 437 (1968), cert. den. 393 U.S. 1043, 89 S.Ct. 673, 21 L.Ed.2d 593 (1969); State v. Smith, 27 N.J. 433, 460 (1958); cf. Wimberly v. Paterson, 75 N.J. Super. 584, 604 (App. Div. 1962), certif. den. 38 N.J. 340 (1962). Defendant also asserts as error a remark contained in the conclusion of the prosecutor's summation. While it would have been better had the remark been left unsaid, there was no objection and we find no plain error. See State v. Farrell, 61 N.J. 99, 106 (1972); State v. Macon, 57 N.J. 325, 333 (1971).
Defendant contends that the court's refusal to charge three of his requests was error. We disagree. Upon consideration of the charge as a whole, we are satisfied that omission to charge N.J.S.A. 2A:151-41 in full was not error and that, in any event, defendant was not thereby prejudiced. We find that the charge as to what constituted a dangerous knife within the meaning of the statute was correct and adequate. The jury was instructed:
A dangerous knife has been defined as a knife dangerous to life or human safety, one by the use of which a fatal wound may probably or possibly be given.
Now, in the definition of a dangerous knife I think you can see that many knives could fall within this definition. For example, as *560 has been suggested, a bread knife or a Boy Scout knife, as a matter of fact, S-1 in my humble opinion  and you will be the ultimate judges  appears to be very similar, S-1, to a Boy Scout knife. A dangerous knife, again, has been defined as a knife dangerous to life or human safety, one by the use of which a fatal wound may probably or possibly be given. So, is a bread knife in a woman's kitchen a dangerous knife? Looking just at the definition I think your answer would be "Yes." But you must look at the facts and circumstances also to determine whether or not S-1 was a dangerous knife. A bread knife in a picnic basket in the company of a family going to a picnic I think you would understand and say in your mind is not a dangerous knife. A woman coming home with a bread knife from a hardware store or a market where knives are sold in a shopping bag, I think you would say is not a dangerous knife. Yet a wound may probably or possibly be given by that knife. Now, a bread knife carried in an inside coat pocket in a business suit while a man is walking the streets, or socializing, or in a tavern, may take on the characteristics of a dangerous knife. Consequently, the statute which I have read to you a few minutes ago prohibiting the possession of dangerous knives in a public place likewise prohibits the carrying of any dangerous instrument of the kind known as a blackjack, billy, a dagger, a dirk, metal knuckles, and other instruments in addition to a dangerous knife. When read in this context I believe it is more readily seen what the Legislature contemplated by a dangerous knife. The apparent intent of the Legislature being that people be prohibited from arming themselves with dangerous instruments; that is to say instruments dangerous to life or human safety, one by which a fatal wound probably or possibly would be given. Hence, this statute prohibits the possessing of a dangerous knife, a type of knife which could be used by the possessor as a weapon. So, whether or not the knife in question allegedly possessed by the defendant, Ebron, in light of this statute is, in fact, a dangerous knife depends upon all of the circumstances under which the defendant allegedly possessed the knife.
We are convinced that it was not error to deny defendant's motion for a new trial. The proofs adequately supported the jury's finding. The newly discovered evidence consisted of the affidavit of an employee of the ice cream store to the effect that on the night in question defendant had ordered and received a milk shake when he was arrested. Denial of the motion did not amount to a mistaken exercise of the discretion vested in the trial judge. State v. Johnson, 34 N.J. 212, 222-223 (1961), cert. den. 368 U.S. 933, 82 S.Ct. 370, 7 L.Ed.2d 195 (1961).
*561 We have reviewed the transcript of defendant's sentencing and the presentence report and find no support therein for defendant's contention that he was prejudiced by the manner of presentation of his juvenile record or that the court considered illegal matter in sentencing him. In the exercise of his discretion the sentencing judge could consider defendant's entire background, State v. Washington, 113 N.J. Super. 184, 185 (App. Div. 1971), certif. den. 58 N.J. 332 (1971), including his prior adjudications of delinquency, State v. Hodgson, 44 N.J. 151, 164 (1965), cert. den. 384 U.S. 1021, 86 S.Ct. 1929, 16 L.Ed.2d 1022 (1966). Here it was conceded that the presentence report correctly portrayed defendant's juvenile record.
We find no cause to disturb the sentence imposed. It was neither unduly punitive nor did it amount to an abuse of discretion. State v. Tyson, 43 N.J. 411 (1964), cert. den. 380 U.S. 987, 85 S.Ct. 1359, 14 L.Ed.2d 279 (1965); State v. Vance, 112 N.J. Super. 479, 481-482 (App. Div. 1970), certif. den. 58 N.J. 97 (1971). The offense was one for which the court could have imposed a much more severe penalty. Defendant had been discharged from probation for a previous offense on May 14, 1971, less than one month prior to the commission of the present offense.
We have reviewed defendant's remaining contentions and find them to be without merit.
Affirmed.