STATE of Missouri, Respondent,

v.

Acie BALDWIN, Appellant.

No. 60481.

Supreme Court of Missouri, En Banc.

Sept. 12, 1978.

Rehearing Denied Oct. 10, 1978.

**238**

Robert C. Babione, Public Defender, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Philip M. Koppe, David L. Baylard, Asst. Attys. Gen., Jefferson City, for respondent.

FINCH, Judge.

Defendant was convicted of forcible rape, § 559.260,[1] and of carrying a concealed weapon, § 564.610. Having been found to be subject to § 556.280 because previously convicted of a felony, defendant was sentenced by the trial court to terms of ten and two years, respectively, to be served consecutively. On appeal to the Missouri Court of Appeals, St. Louis District, the judgment was affirmed in an opinion by Simeone, C. J.,[2] with a dissent by Kelly, J., as to the conviction on the charge of carrying a concealed weapon. On application of defendant, we ordered the case transferred and we now decide it as though here on direct appeal. Art. V, § 10, Mo.Const. We affirm.

In his brief and in oral argument defendant contended that the trial court erred (1) in denying his motion for judgment of acquittal on Count I at the close of all of the evidence because the evidence did not support the charge of forcible rape; (2) in failing to sustain his motion for judgment of acquittal on Count II at the close of all the evidence because the State's evidence failed to prove two elements of the crime of carrying a concealed weapon, *i. e.*, (a) that the knife was in fact a dangerous and deadly weapon, and (b) that defendant intended to use the knife as a dangerous and deadly weapon; (3) in trying the separate counts of forcible rape and carrying a concealed weapon in a single trial; and (4) in admitting testimony of a police officer that the distance between a tavern and the victim's

---

1. All statutory references are to RSMo 1969 unless otherwise indicated.

2. Judge Simeone, then a member of the Missouri Court of Appeals, St. Louis District, has since become a member of this court.

home "took one and one-half minutes to drive" because said testimony was "irrelevant to any legal or factual issue before the trial court."

Subsequent to oral argument defendant filed a motion to set aside the submission and to be permitted to assert the additional point that the court record concerning the prior conviction, relied on as the basis for involving the Second Offender Act, was insufficient for that purpose because it did not show any motion for new trial or allocution, did not show any waiver thereof and did not show sentencing of defendant. The request to set aside the submission was denied but defendant was granted leave to file a brief asserting this additional point. The State was allowed to file an additional brief in response thereto.

## I. Submissibility of Charge of Rape

 The crux of defendant's attack on the submissibility of the State's case on the rape charge is directed at whether the evidence supports a finding that the carnal knowledge was by force and against the will of the prosecutrix. Generally, these issues are to be resolved by the jury except where the reviewing court can declare as a matter of law that the evidence adduced by the State was insufficient to sustain a finding of these elements of the crime. *State v. Garrett*, 494 S.W.2d 336, 338 (Mo.1973). In reviewing this issue of submissibility, it is the duty of the appellate court to view the evidence in the light most favorable to the State. *State v. Garrett*, 494 S.W.2d at 337.

 Defendant complains that the State's case rested almost entirely on the testimony of the prosecutrix and that the circumstances leading up to the alleged rape suggest that corroborating testimony was necessary. The basis for this argument is that there was evidence that they had been drinking and dancing together in a bar prior to the occurrence, that they had been acquainted for about two years and that she cooperated by removing her clothing prior to the intercourse. While these are circumstances the jury may weigh in determining the credibility of the prosecutrix,

the rule in this state is that a conviction in cases of rape may be had upon the uncorroborated evidence of the prosecutrix. It is only in those cases where the evidence of the prosecutrix is of a contradictory nature or, when applied to the admitted facts in the case, her testimony is not convincing and leaves the mind of the court clouded with doubts, that she must be corroborated or a judgment cannot be sustained. *State v. Burton*, 355 Mo. 467, 196 S.W.2d 621, 622–23 (1946).

The prosecutrix testified that when she got ready to leave the bar and walk home the defendant offered to walk home with her. Near her home she was pushed into an alley by defendant who then said to her, "I want some." She responded, "Man, you got to be kidding. Cold as it is?" There was testimony in the case that the temperature that night was 24 degrees.

Prosecutrix testified that she attempted to dissuade him by telling him that her house was warmer but he told her he was "going to get it here" in the alley, and if she didn't do it, he was going to hurt her. He kept one hand on her shoulder and the other one in his right jacket pocket. He pushed her down towards a small pile of sawdust and ordered her to pull off her coat and lie on it. She again suggested that they go up to her house, but he replied, "I'm out on the street, I will do what I want to do." She protested that she didn't want to have to lie down there but he insisted. While she removed her coat, she continued begging him not to do this, but he said, "I'm going to make it good for you. I know you ain't going to tell nobody." She said she wasn't going to tell anyone; that she knew he meant business. She was hoping that the police who usually patrol that alley might show up. Defendant tried to help her take her pants off. She pulled her clothes off and laid down naked from the waist down and the defendant engaged in intercourse. She admitted she did not "yell" or "holler" because there "wasn't no people around there in hollering range in the project" and that to "yell" for help in that neighborhood would be fruitless.

She testified that she did not consent to the act of intercourse of her own free will but because of a fear of being hurt. She explained her invitation to defendant to go to her house by testifying that she knew that her children and her 44-year-old male cousin were there and if she could get him to go there, she could be helped.

After defendant left her, she immediately ran home, where she reported what had happened to her children and her cousin, and then notified the police. The children testified that when she arrived home she was crying and looked like she had been attacked. She was upset and she had sawdust in her hair and on her clothes.

After the police arrived at her home, she related what had happened and accompanied them to the alley where she said the attack occurred. Her coat and panties were recovered there. She then accompanied the police officers to the tavern from whence she had left with the defendant and identified him for the police officers as the rapist.

■ In the light of prosecutrix' testimony, we conclude that corroboration of prosecutrix' testimony was not required. Instead, this case is controlled by that line of cases which hold that consent induced by fear is no consent and that the question of whether the prosecutrix submitted to the demands of the defendant charged with forcible rape because of fear of great bodily harm to herself in the event she physically resisted is a jury question. *State v. Garrett,* 494 S.W.2d at 338; *State v. Gray,* 423 S.W.2d 776, 780 (Mo.1968); *State v. Beck,* 368 S.W.2d 490, 493 (Mo.1963); *State v. Schuster,* 282 S.W.2d 553, 556 (Mo.1955); and *State v. Boone,* 519 S.W.2d 27, 29 (Mo. App.1975).

We conclude that the State's evidence as hereinbefore set out made a submissible case and we rule this point against defendant.

## II. *Submissibility of Charge of Carrying a Concealed Weapon*

Defendant's second point is that his motion for judgment of acquittal on the charge of carrying a concealed weapon should have been sustained at the close of all the evidence because the State failed to make a sufficient showing (a) that the knife was in fact a dangerous and deadly weapon, and (b) that defendant intended to use the knife as a dangerous and deadly weapon.

■ It was argued in the dissenting opinion in the court of appeals and in defendant's application to transfer that this is a circumstantial evidence case. We do not agree. There was direct evidence that when arrested defendant had the steak knife wholly concealed in his pants pocket. There was direct evidence of defendant's threat to harm prosecutrix. In addition, there was circumstantial evidence as to possible use of that knife under the particular circumstances, including time and place that he possessed said hidden knife. Where the evidence, as here, is partially direct and partially circumstantial, it is not necessary to give a circumstantial evidence instruction and the test as to submissibility is not that of a purely circumstantial evidence case. In deciding submissibility we accept the State's evidence as true and we give the State the benefit of all reasonable inferences deducible therefrom, disregarding all evidence and inferences to the contrary. *State v. Stapleton,* 518 S.W.2d 292, 296 (Mo. banc 1975).

■ In a prosecution under § 564.610, a submissible case is made "when the state's evidence or reasonable inferences therefrom demonstrate (a) the carrying of a dangerous or deadly weapon, (b) concealed on or about the person, (c) along with an intent to so conceal." *State v. Achter,* 514 S.W.2d 825, 827 (Mo.App.1974). *See also State v. Jordan,* 495 S.W.2d 717, 720 (Mo.App.1973). These were the issues submitted to the jury in Instruction No. 7 which corresponds to MAI-CR 13.10.

Defendant does not dispute the fact that the steak knife was found concealed in his pants pocket and he does not contend that the evidence was insufficient to permit the jury to find that he intended to conceal the knife in his pocket. The only real issue raised concerning the submissibility of the

concealed weapon charge is whether there was evidence from which the jury could find that the knife found on defendant was a dangerous and deadly weapon.

■ In providing for punishment for the offense of carrying concealed weapons, § 564.610 enumerates certain weapons which are dangerous and deadly per se and require no jury finding to that effect. *State v. Dorsey,* 491 S.W.2d 301 (Mo.1973). These weapons include any kind of firearms, a bowie knife, a springback knife, and other things. The statute also makes punishable the concealed carrying of "other similar deadly weapons." When the weapon is not one specifically enumerated in the statute, the issue as to whether it is dangerous and deadly must be submitted to the jury unless the court can declare as a matter of law that under the evidence in the case the jury could not have concluded that the weapon was dangerous and deadly.

■ It is obvious that there are many useful and practical items which are carried by persons for peaceful purposes. They are not normally thought of as dangerous and deadly weapons. Pocket knives, hammers, screwdrivers, wrenches, cutting tools and letter openers are examples of such articles. Other items such as butcher knives, steak knives, and ice picks, though not usually carried concealed on the person, are useful utensils utilized for peaceful purposes. Such everyday instruments become dangerous or deadly only when they are used or carried for use as a weapon. The determination of whether in a particular case such instrument is dangerous and deadly would depend on a variety of factors—the nature of the instrument itself, the circumstances under which it is carried, including time, place, and situation in which defendant is found in possession, the manner in which it is carried, the particular person carrying it, and perhaps other factors such as possible peaceful uses therefor which the possessor might have.

Several courts have examined these surrounding circumstances in determining whether such instruments are dangerous. For example, in *State v. Ebron,* 122 N.J.Super. 552, 301 A.2d 167, *cert. denied,* 63 N.J. 250, 306 A.2d 453 (1973), defendant was convicted under a statute similar to ours of carrying a concealed knife. The court, conceding that all knives are not per se dangerous, concluded that it was proper in that case to submit to the jury the issue of whether the knife was dangerous, saying, 301 A.2d at 169–70:

"A knife may be used as a tool in certain trades, hobbies or sports. Thus, a cook or chef may carry the tools of his trade, a barber may carry a straight razor, or a hunter, a camper or a Boy Scout may have a legitimate use for a hunting knife. As we interpret the statute it outlaws the carrying of a knife, even if it would otherwise be a useful object, where the surrounding circumstances, such as the time, place and situation under which the defendant was found in possession of it, or any alteration of the knife itself, indicate that his possession is for the purpose of using it, then or later, unlawfully against another. [Citations omitted.]"

In *State v. Green,* 62 N.J. 547, 303 A.2d 312 (1973), defendant and a companion were observed in the act of shoplifting and then leaving the store. The defendant and his companion were apprehended and a search revealed that each had a pocketknife in his possession. Defendant's knife had a single folding blade which was approximately three and one-half inches long and would not lock when open. Although defendant's conviction was reversed for instructional error, the court held that the evidence would have sustained defendant's conviction for possession of a "dangerous knife" even though the knife was not declared by statute to be a dangerous and deadly weapon per se. The court said, 303 A.2d at 319:

"Plainly the possession of any knife is not an incriminatory offense and a knife, popularly known as a pocketknife, penknife or jackknife, commonly carried for personal utility, convenience or other lawful purpose is not a 'dangerous knife' *per se.* That is not to say, however, that such a knife, irrespective of the length of its blade or the circumstances under which it

is carried, may not be a lethal weapon and should be excluded as a matter of law from the term 'dangerous knife' the possession of which is interdicted by statute. Distilled from the rationale of our relevant statutes and the prevailing decisional law is a reasonable conclusion that a knife which is not dangerous *per se* will be a 'dangerous knife' if the purpose of possession is its use as a weapon."

In *Scott v. United States,* 243 A.2d 54 (D.C.Ct.App.1968), defendant was stopped for questioning in the lobby of a movie theater. He had a thin folding knife up the sleeve of his coat. In upholding the conviction of defendant for carrying a concealed weapon, the court recognized that the knife was not deadly and dangerous per se since it could be used as a tool in certain trades or hobbies, but it went on to observe, 243 A.2d at 56:

"The statute, as we interpret it, outlaws the carrying of an otherwise useful object where the surrounding circumstances, such as the time and place the defendant was found in possession of such an instrument, or the alteration of the object, indicate that the possessor would use the instrument for a dangerous purpose."

In *Gilmore v. United States,* 271 A.2d 783 (D.C.Ct.App.1970), defendant had in his possession a concealed "peg" knife when he was apprehended in a bus terminal at 3 a. m. The court held that notwithstanding defendant's explanation that he used the knife in his work as a cement bag handler, the surrounding circumstances shown in evidence were sufficient to enable the jury to have inferred and found that defendant, if necessary, intended to use the knife for a dangerous purpose. In so holding, the court stated at 784:

"We said recently:

Section 22–3204 does not prohibit the carrying of such instruments [knives] for a legitimate purpose. The statute, as we interpret it, outlaws the carrying of an otherwise useful object where the surrounding circumstances, such as the time and place the defendant was

found in possession of such an instrument, or the alteration of the object, indicate that the possessor would use the instrument for a dangerous purpose."

In *Clarke v. United States,* 256 A.2d 782 (D.C.Ct.App.1969), defendant was convicted of carrying a dangerous and deadly weapon after he was found to have been carrying a straight razor concealed on his person. He was apprehended by an officer after a report from a man that defendant might have robbed a girl. When the officer walked toward defendant, he began to run. In upholding his conviction, the court said at 786:

"The test is '[whether] the purpose of carrying the object, under the circumstances, is its use as a weapon.' [Citation omitted.] This may be shown by an examination of the time and place the defendant was found carrying it, among other circumstances. [Citation omitted.] Moreover, in the absence of any explanation from defendant, the conceivable legitimate reasons for carrying such an instrument in that setting are a proper subject of inquiry. [Citation omitted.] The jury could well have concluded that appellant was not carrying the razor on the street for use 'as a tool in [a] certain [trade] or [hobby] or * * * for utilitarian reasons.' [Citation omitted.]"

Applying the test articulated in these cases, we conclude that in view of all the circumstances shown in evidence, including the nature of the knife, where it was found on defendant's person, the time and place that defendant was carrying the concealed steak knife and what had occurred a short time earlier involving defendant and prosecutrix, the jury was justified in finding that the steak knife was a dangerous and deadly weapon.

To review briefly, at about 10:00 p. m. while walking prosecutrix home, defendant had forcibly raped her. At the time he warned her that if she did not consent he was going to hurt her. He did not display a weapon but at the time of the threat he had one hand on her shoulder and one hand in

his jacket pocket where he kept it until he had her on the ground. After the rape he returned immediately to the Interracial Bar from which he had departed with prosecutrix. He remained there until apprehended approximately one hour later near the entrance. When arrested, he had in his pants pocket a six inch steak knife with serrated blade. No witness had seen the knife until it was removed from defendant's pants pocket.

Based on the foregoing evidence, the jury could have concluded that defendant had the steak knife in his pocket at the time he threatened prosecutrix and then raped her or it could have concluded that he acquired the steak knife after he returned to the Interracial Bar. Either conclusion, considering all the facts and circumstances shown in evidence, would have justified the jury in finding that the knife in defendant's pocket on this occasion was a dangerous and deadly weapon. If it was in defendant's pocket at the scene of the rape, the jury could have found that defendant could and would have used the knife to hurt Mrs. Brodie, as he threatened, if he did not succeed in having intercourse with her. On the other hand, if the jury concluded he did not have the knife then but obtained it after he returned to the bar, if would be justified in finding that he acquired it and placed it in his pocket for the purpose of using it as a weapon, if necessary, either to resist arrest for the rape or to protect himself from possible reprisals by Mrs. Brodie's family or friends. According to Mrs. Brodie, her cousin, who was at her apartment when she came in after being raped, had gone to the bar to seek out and confront defendant.

The time, the place, the circumstances, the rape which was committed, and the nature of the knife, all were such that they could indicate to the jury that the knife was not being carried as an innocent tool of defendant's trade or something he customarily carried in his pocket for peaceful purposes. Rather, they were such as to indicate that defendant carried it and would use it as a dangerous weapon. The jury was justified in so finding. On review, we cannot say as a matter of law that the jury could not have so found therefrom. Accordingly, we rule this point against defendant.

## III. Contention That Trial of the Two Counts in a Single Trial Was Plain Error

■ In the trial court defendant filed a motion to sever the two counts in the information and to try them separately. Thereafter, defendant voluntarily withdrew that request before the trial court took any action thereon. As a result, the two counts were tried together.

After defendant was convicted, he made no complaint in his motion for new trial about the two counts being tried together. He raises the complaint for the first time on appeal, claiming that the trial court committed plain error in permitting the counts to be tried in a single trial.

Under these facts, we find no plain error under Rule 27.20(c), V.A.M.R. We rule this point against defendant.

## IV. Complaint as to Rebuttal Evidence of Detective Nation

■ There was testimony in the case as to the distance between Mrs. Brodie's apartment (near which the rape occurred) and the Interracial Bar and the time it would take to walk from one to the other. Mrs. Brodie testified that it would take five minutes to walk—ten at the most. Defendant's only witness testified that it would take at least twenty minutes to walk to the apartment and back to the bar. Detective Nation was called in rebuttal. He was not permitted to testify how long it would take to walk because he had not walked it. He then was asked how long it took him to drive his automobile between the two places. Defendant objected that the question was not relevant. The objection was overruled and the officer stated it was a minute and a half to two minutes, saying it was a distance of three blocks.

General objections provide nothing for appellate review. *State ex rel. West v.*

*Diemer*, 255 Mo. 336, 164 S.W. 517, 521 (1914); *McIlroy v. Hamilton*, 539 S.W.2d 669, 675 (Mo.App.1976). In addition, no prejudice is demonstrated. We overrule this contention.

## V. Contention That Defendant Was Not Shown to Be Subject to the Second Offender Act

■ The information charged defendant with a prior conviction, alleging:

"That ACIE BALDWIN in the City of St. Louis, State of Missouri, on the 13th day of October, 1969, in the Circuit Court was duly convicted of the offense of Carrying Concealed Weapon, and in accordance with said conviction was duly sentenced by said Court to an imprisonment in the Workhouse of the City of St. Louis for the term of one year and was duly imprisoned in the said Workhouse of the City of St. Louis aforesaid, on October 14, 1969, in accordance with said sentence; and that the said ACIE BALDWIN was paroled from said Workhouse of the City of St. Louis on December 31, 1969."

At trial, outside the hearing of the jury, the following entry from the records of the Circuit Court of the City of St. Louis was read into the record:

"Monday, October 13, 1969. 1864–R. *State of Missouri v. Acie Baldwin.* On Information for one prior conviction of a felony and Carrying Concealed Weapon. Now on this day comes the Assistant Circuit Attorney for the State and the defendant herein, in person and in the custody of the Sheriff, and in the presence of William Nicholls waives right to a trial by jury. Whereupon, the trial of this cause proceeds without jury and the testimony of the witnesses for the State and for the defendant are heard and concluded and cause is taken as submitted. Whereupon, the Court finds defendant, Acie Baldwin, guilty of Carrying Concealed Weapon and affixes and assesses punishment at one year in the St. Louis Medium Security Institution. It is further ordered by the Court that the State

have and recover of said defendant the costs in this cause expended and that hereof execution issue therefor."

An official with the Medium Security Institution of the city of St. Louis testified that defendant entered that institution in connection with Case No. 1864–R on October 14, 1969, and was paroled on December 31, 1969.

After defendant advised that he had no testimony to offer in connection with the question of a prior conviction, the trial court made this finding:

"* * * Acie Baldwin, defendant herein, was on October 13, 1969, convicted of the offense of Carrying [a] Concealed Weapon, a felony, in the Circuit Court of the City of St. Louis, and was sentenced on said conviction to one year in the Medium Security Institution where he was committed on October 14, 1969, and in accordance with said sentence from which he was paroled on December 13, 1969, and on the basis of this finding of fact, the Court finds the provisions of the Second Offender Act of the State of Missouri are applicable to this case."

Subsequent to oral argument of this case in this court, defendant, for the first time, asserted that it was plain error for the trial court to find him subject to the Second Offender Act because, according to defendant, the evidence disclosed that he had not been sentenced in 1969 for the offense of carrying a concealed weapon. This, says defendant, deprived him of his right to have the jury determine the amount of punishment which should be assessed, resulting in manifest injustice and a miscarriage of justice.

Defendant argues the court entry concerning case No. 1864–R, read into the record in this case, shows that the trial court, in No. 1864–R found defendant guilty of Carrying Concealed Weapon and assessed his punishment at one year in the St. Louis Medium Security Institution but did not sentence him. In addition, defendant argues, there was no motion for new trial and no allocation and counsel asserts that the file in said case shows no waiver of a motion for new trial or allocution.

We reject defendant's claim of plain error. In the first place, it is not a condition precedent to sentencing that the record show the filing of a motion for new trial. A defendant has the right to file a motion for new trial but is not compelled to do so. If he does not file such a motion within the time allowed by the applicable rule, the right to file such motion is lost. The record need not show express waiver of the right to file such a motion.

Neither is defendant entitled to relief on the basis that the record in case No. 1864-R does not show allocution. Section 546.570 requires allocution only after conviction by a jury. *State v. McClanahan*, 418 S.W.2d 71 (Mo.1967); *State v. Ashworth*, 346 Mo. 869, 143 S.W.2d 279 (1940).

Defendant's argument that he was not sentenced in case No. 1864-R is based upon the fact that the judgment does not specifically say he was "sentenced" but instead recites that the court "affixes and assesses punishment at one year in the St. Louis Medium Security Institution." While it would have been crystal clear if the court had used the term "sentences," we conclude that the judgment as a whole shows that defendant was sentenced. The court did not say simply that it assessed punishment at one year. It recited that it "affixes and assesses" punishment at one year. It then went on and allowed jail time prior to conviction and provided for assessment of costs and for execution. These are characteristics of a judgment in which the defendant is sentenced, not an entry in which the court simply indicates what amount of confinement it will fix. The judgment was so treated at the time because defendant on the following day entered the Medium Security Institution and began serving his sentence. Judge Gaertner so interpreted the earlier judgment when he made his finding in this case that defendant had been convicted and sentenced previously for Carrying Concealed Weapon. Obviously, counsel of defendant so read the judgment until very recently because no question was raised at the trial or in defendant's motion for new trial or in the brief in the court of appeals or even in oral argument in this court.

The cases cited by defendant in his supplemental brief do not show that he is entitled to relief on this point. For example, *State v. Gordon*, 344 S.W.2d 69 (Mo.1961), involved a factual situation wherein defendant, after conviction, was given a suspended sentence. He was not sentenced then or later. Therefore, the court held that such proceedings would not support the application of the Second Offender Act. Likewise, in *State v. Crate*, 493 S.W.2d 1 (Mo.App. 1973), the court held that there was no pleadable or provable prior conviction when in an earlier proceeding imposition of sentence was suspended and defendant placed on probation after he had been convicted.

The judgment is affirmed.

MORGAN, C. J., BARDGETT, DONNELLY and RENDLEN, JJ., and HOUSER, Special Judge, concur.

SEILER, J., concurs in separate concurring opinion filed.

SIMEONE, J., not participating because not a member of the court when cause was submitted.

SEILER, Judge, concurring.

There is no direct evidence that the defendant had the knife at the time of the rape. The prosecutrix did not see or feel a knife or claim that defendant said he had a knife. Defendant had one hand in his right hand coat pocket (which might have been to keep his hand warm—it was eight degree below freezing—or it might have been that defendant wanted the prosecutrix to believe he had some sort of weapon concealed in his coat pocket), but the first time anyone saw a knife in the possession of the defendant was an hour later at a different location, under entirely different and innocent circumstances and surroundings, when he was arrested and a knife was found in his left front pants pocket. In my opinion, this affords no basis whatever for inferring that defendant had this knife with him during the rape occurring at an earlier time at a different place.

The prosecutrix said defendant said if she did not submit, he would hurt her. But this is no evidence that defendant had a knife or any other weapon. Being a male and bigger and stronger than prosecutrix, there were many ways defendant could have hurt her without using a knife. The best that can be said about the evidence in this case as establishing that defendant had the knife at the time of the rape, even if everything the prosecutrix said is accepted as true, is that such a conclusion is rank speculation, resting on inferences which are no more than possibilities, and is far short of being sufficient to support a verdict of guilty. The evidence is equivocal—it points nowhere with any degree of probability, like a bobbing compass, not susceptible of a definite reading. The presumption of innocence is reduced to empty rhetoric if all the state need show to convict is that the defendant might have had a weapon on his person at the time of the rape. If the weapons conviction had to rest on its having taken place at the time of the rape, I would dissent. The insufficiency of the evidence on this aspect of the case is even more apparent when it is contrasted with the evidence supporting the conviction of carrying a concealed weapon at the time of the arrest.

As to the situation when arrested, unquestionably defendant did have the knife in his left front pants pocket, out of sight, at this particular time. When the jury heard this evidence, therefore, they were not asked to speculate as to the fact of possession or to base its existence on a possibility. They had substantial evidence before them on which to draw their conclusion. Given this solid premise, the argument can then be made that since defendant had committed the crime of rape (or so this same jury found), he had the weapon by the time he was arrested for the purpose of using it to resist arrest or against prosecutrix's relatives bent on revenge. On this basis, therefore, I concur in affirmance.