LT:IA

**UNITED STATES of America ex rel. Charles Ray EBRON, Petitioner,**

v.

**ATTORNEY GENERAL OF the STATE OF NEW JERSEY et al., Respondents.**

**Civ. A. No. 798-73.**

United States District Court,
D. New Jersey.
June 21, 1974.

Martha G. Pugh, Summit, N. J., for petitioner.

Elson P. Kendall, Asst. Prosecutor, Union County, for respondents.

## OPINION AND ORDER

STERN, District Judge.

Petitioner seeks a Writ of Habeas Corpus pursuant to the provisions of Title 28 U.S.C. § 2241 et seq.

Petitioner was convicted by a jury in the Union County Court of the charge of possessing a "dangerous knife", contrary to N.J.S.A. 2A:151-41(c).

Petitioner appealed to the Superior Court of New Jersey, Appellate Division, which affirmed Petitioner's conviction on March 2, 1973 in an opinion published at 122 N.J.Super. 552, 301 A.2d 167.

Petitioner then brought a Petition for Certification to the Supreme Court of New Jersey, which was denied on May 2, 1973. Petitioner's application for reconsideration of the denial of Certification was in turn denied on May 29, 1973.

Petitioner has thus exhausted the available state remedies and his Petition for a Writ of Habeas Corpus here is timely. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

The Petitioner herein, Charles Ray Ebron, a high school student at the time of his arrest and a college student at the time of his trial, was arrested in an ice cream parlor about a block from his home in Summit, New Jersey, while he waited to be served a vanilla milkshake. The arresting officer observed Petitioner standing at the counter and noticed "a boy scout knife" which he described as protruding from Ebron's back pocket. It is undisputed that the knife was in a sheath, and the sheath was itself attached to Ebron's belt. The tip end of the sheath was tucked into the back pocket.

The officer entered the store, grabbed the knife from the sheath and placed Ebron under arrest. No evidence of any violence, any attempt or any intent to commit any violence by Petitioner was proferred to the trial court. Indeed, no evidence of an intention by Ebron to commit any illegal act was offered to the jury which convicted him. Ebron was convicted solely upon his *per se* possession of a boy scout knife, in a sheath attached to his belt. He received a sentence of an indeterminate term at a youth reception and correction center, of which he served five months, and is currently on parole.

N.J.S.A. 2A:151-41(c) states in relevant part:

> Except as hereinafter provided, any person who carries, holds or possesses in any automobile, carriage, motor cycle or other vehicle, or on or about his clothes or person, or otherwise in his possession, or in his possession or under his control in any public place or public area:
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (c) Any dangerous instrument of the kinds known as a blackjack, slung shot, billy, sandclub, sandbag, bludgeon, metal knuckles, cestus or similar leather band studded with metal for fitting on the knuckles, loose wool impregnated with metal filings, or razor blades imbedded in wood slivers, dagger, dirk, *dangerous knife* or knife as defined in chapter 5 of the laws of 1952 (C. 2A:151-62), stiletto, grenade, bomb or other explosive, other than fixed ammunition, except as such person may be licensed to carry, hold or possess explosives under the provi-

sions of Title 21 of the Revised Statutes and amendments thereto, is guilty of a high misdemeanor.

(Emphasis added)

No factual issue is raised by this petition. The only issue before this Court is Petitioner's claim that, as a matter of law, this statute which condemns the mere possession of a "dangerous knife", without further description, and permits punishment for such possession by incarceration for not more than 7 years, or by a fine of not more than $2,000.00, or both (N.J.S.A. 2A:85-6), would be unconstitutional for vagueness, unless the words, possession of a "dangerous knife", are construed to mean possession of a knife with the *intent* to *use* it in a dangerous or an unlawful manner.

There is merit to the Petitioner's claim. What is a "dangerous knife"? How many inches must it be? What knives are permitted, and what knives are outlawed by this statute? Under what circumstances is it permissible to possess a "boy scout knife" and when does such possession become criminal?

In his charge to the jury which convicted Ebron, the distinguished trial judge grappled with this problem and gave the following instruction to the jury:

. . . the essential elements that the State must prove beyond a reasonable doubt in order to sustain a conviction are as follows: (1) That the knife allegedly in the possession of the defendant, Mr. Ebron, at the time and place stated in the indictment and marked in evidence as S-1 is, in fact, a dangerous knife. (2) That the defendant, in fact, possessed S-1 at the time and place alleged in the indictment. And, (3) That the defendant's possession of S-1 at the time and place alleged in the indictment was a public place or a public area.

*A dangerous knife has been defined as a knife dangerous to life or human safety*, one by the use of which a fatal wound may probably or *possibly* be given.

(Trial transcript, p. 89 et seq.)   (Emphasis added)

This charge, which defined a dangerous knife as a knife which can be dangerous was a tautology. The jury was given guidelines so broad that any knife might be so characterized. A small pen knife, the kind attached to a key chain for example, could *possibly* inflict a fatal wound if applied properly; so might a boy scout knife carried by a boy scout. So, indeed, might a kitchen knife carried by a housewife from store to home. All could be convicted if the crime is nothing more than mere possession of a knife capable of inflicting a grievous wound.

The statute, however, does not purport to outlaw the carrying of all knives under all circumstances, only those that are "dangerous". If the definition of "dangerous" is so broad as to encompass *any* knife *capable* of inflicting a dangerous wound, and if no element of the *intent* of the possessor is factored into the equation, then it becomes impossible for ordinary citizens to conform their conduct to the requirement of the statute. No one can know what knives the law permits, on the one hand, or condemns on the other.

This problem apparently weighed on the mind of the jurors. After receiving this charge they emerged from their deliberations to ask the judge the following question:

In consideration of the fact that both the Prosecutor and the defense agree that the defendant was in possession of the knife, *is it our responsibility to decide what his apparent motivations for having the knife were?* If we believe that he in fact found the knife in the park, should that affect our verdict?

(Trial transcript, p. 98)   (Emphasis added)

The judge answered as follows:

I will attempt to answer that by stating to you that *it is not incumbent upon the State to prove motive*; that is the State *need not prove*, for exam-

ple, that he *intended* to commit a crime such as robbery or assault and battery, atrocious assault and battery, at the time that he possessed this knife . . . The State proves possession and it must prove that at the time the defendant possessed the knife, at the time the knife was taken from the defendant, the knife was a dangerous knife.

(Trial transcript, p. 98 et seq.) (Emphasis added)

This charge to the jury, apparently patterned after the case of State v. Horton, 98 N.J.Super. 258, 236 A.2d 891 (1967),[1] affirmatively took the issue of intent from the jury.

*Horton* had concluded that the statute did not suffer from the constitutional infirmity of vagueness. In *Horton*, however, defendant was caught in the act of shoplifting. While being escorted to the police car, he shoved the officer to the ground and ran away. When apprehended, he scuffled with the police and attempted to reach into his right back pocket, which was later found to contain the knife in question.

Such a fact situation bears on the question of intent, and is in contrast to the matter at bar, where Petitioner was apprehended in the act of ordering and consuming a vanilla milkshake while wearing what the judge described as a boy scout knife. This fact pattern points out the inadequacy of the charge in *Horton* and in the case before this Court.

While *Horton* has not been reversed or overruled, subsequent case law has recognized the need for the showing of dangerous intent for conviction under this statute.

In State v. Edwards, 120 N.J.Super. 46, 293 A.2d 234 (1972), Judge Brendan T. Byrne concluded that, "there seems little doubt that the intent of the posses-

sor is a highly significant 'fact and circumstance' under our present law." 120 N.J.Super. at 47, 293 A.2d at 234.

In addition, Judge Byrne advised that the "correct approach to the interpretation of this statute is that taken by the District of Columbia Court of Appeals in Scott v. United States, 243 A.2d 54 (1968)", and then proceeded to quote the following paragraph from *Scott*:

This court has previously held that all knives are not per se dangerous weapons . . . A knife may be used as a tool in certain trades or hobbies or it may be carried for utilitarian reasons. Section 22–3204 does not prohibit the carrying of such instruments for a legitimate purpose. The statute, as we interpret it, outlaws the carrying of an otherwise useful object where the surrounding circumstances, such as the time and place the defendant was found in possession of such an instrument, or in the alteration of the object, *indicate that the possessor would use the instrument for a dangerous purpose.*

120 N.J.Super. at 47, 293 A.2d at 235. (Emphasis added)

The New Jersey Supreme Court has subsequently read the requirement of unlawful purpose into the statute:

. . . Distilled from the rationale of our relevant statutes and the prevailing decisional law is a reasonable conclusion that a knife which is not dangerous per se will be a 'dangerous knife' *if the purpose of possession is its use as a weapon.*

This brings us to the issue of whether the trial judge committed plain error in his charge to the jury. The jury was told that the words 'dangerous knife' as employed in the statute means exactly what they say and that it should decide under all the facts and circumstances whether the

---

[1] "The court then charged that it was for the jury to say whether in light of the statute the knife was a dangerous knife under the circumstances attending the taking of it from the defendant. In our view the charge provided sufficient direction for a jury to make a reasoned determination of the question presented to it, and that the issue was properly submitted to the jury." 98 N.J.Super. at 261–262, 236 A.2d at 893.

State had proved beyond a reasonable doubt that defendants possessed on the day named in the indictment a 'dangerous knife.'

*To define a dangerous knife as a knife that is dangerous is a meaningless tautology. We interpret section 41(c) to outlaw the carrying of an otherwise useful pocket knife* or the like when the surrounding circumstances—such as the \* \* \* concealment, the time, place and actions of the carrier when found in his possession—*indicate that the purpose of carrying the instrument is its use as a weapon.* The trial judge should have elaborated more fully on the meaning of 'dangerous knife' by giving guidelines or standards to the jury for reaching a proper conclusion.

State v. Green, 62 N.J. 547, 560, 303 A. 2d 312, 319 (1973). (Emphasis added)

In a subsequent case, State v. Howard, 125 N.J.Super. 39, 308 A.2d 366 (1973), the Appellate Division reversed the dismissal of an indictment under the dangerous knife statute where defendant had a straight razor in his possession. The court stated:

Thus, while a straight razor, which is a specialized type of knife, may be a domestic tool and not a dangerous knife, per se when carried for a lawful purpose, that does not mean that a straight razor may not be a lethal weapon and should be excluded as a matter of law from the term 'dangerous knife' the possession of which is prohibited by the statute. A straight razor which is not dangerous per se will be a dangerous knife within the meaning of N.J.S.A. 2A:151–41(c) *if the purpose of possession is its unlawful use as a weapon against another person.*

125 N.J.Super. 45, 308 A.2d at 369. (Emphasis added)

As construed by the Supreme Court in *Green,* and by the Appellate Division in *Howard,* this statute is constitutional. It was not, however, so submitted to the jury which convicted Ebron. They were told to disregard Ebron's motive or intent in possessing the knife, and to concentrate instead on the propensities of the knife.

In affirming Ebron's conviction, the Appellate Division noted:

As we interpret the statute it outlaws the carrying of a knife, even if it would otherwise be a useful object, where the surrounding circumstances, such as the time, place and situation under which the defendant [Ebron] was found in possession of it, or any alteration of the knife itself, indicate that his possession is *for the purpose of using it, then or later, unlawfully against another.*

122 N.J.Super. 557, 301 A.2d 169–170. (Emphasis added)

We fully agree with the Appellate Division's interpretation of the statute, but fail to see how this standard was conveyed to the jury at the trial level, in light of the trial judge's specific response to the jury's question removing Ebron's intent and motive from the case: "I will attempt to answer that by stating to you that *it is not incumbent upon the State to prove motive*; that is *the State need not prove,* for example, *that he intended to commit a crime* such as robbery or assault and battery, atrocious assault and battery, at the time that he possessed this knife . . ."

Inasmuch as the New Jersey Supreme Court in State v. Green, *supra,* has interpreted the statute to require proof of a criminal purpose in addition to proof of mere possession, the statute is saved from constitutional vagueness.[2]

---

2. It should be noted that the New Jersey Criminal Law Revision Commission in its Final Report on the Penal Code, submitted October 1971, has recommended a revised weapons statute that would read:

"i. Knives With Purpose to Use. Any person who has in his possession any dagger, dangerous knife, dirk, razor, stiletto, or any weapon with a purpose to use the same unlawfully against another is guilty of a crime of the fourth degree."

In the commentary, the Commission states:

"*Knives With Purpose to Use: Subsection i.*

But Ebron's conviction cannot stand. His conviction was predicated upon a construction of the statute which converted the statute into a prohibition which no citizen could follow with certainty and no jury could apply with rationality.

We note that the granting of the Writ is no longer contested. After full oral argument on the legal issues involved herein, the State, through the Union County Prosecutor, has consented to the issuance of the Writ. His letter to the Court states in part:

> . . . [W]e recognize that since this case came to judgment there has been some modification of our State's construction of the applicable law after the date of conviction.

> In any event, though it is our duty to enforce the law, we feel a personal sympathy for the defendant, who is presently a college student and apparently a law-abiding citizen. We believe justice should be tempered with mercy, and it would satisfy this office more to see the defendant be a proud and constructive member of society rather than to leave him stigmatized a criminal. Accordingly, given the particular facts of this case, we consent to a judgment for the defendant-petitioner on his Petition for Habeas Corpus.

The Court wishes to commend the Union County Prosecutor. His candor, in his letter to us, and during oral argument, through his Assistant, is in the highest tradition of his service. He deserves, and he has, the esteem of the Court.

Now, therefore, it is

Ordered,

1. That the judgment of conviction of the Union County Court entered on February 18, 1972 is hereby vacated;

2. That the Petitioner be released and discharged of all restraints upon

him as a result of the sentence imposed upon his conviction in the Union County Court on February 18, 1972, including any restraints imposed by the terms of his parole;

3. That the application for a Writ of Habeas Corpus be, and the same is, hereby granted.

---

This is New York Penal Code § 265.05. It changes existing law in requiring a purpose as to possession of knives which are

not, in themselves, indicative of criminal purpose."