*327 OPINION OF THE COURT
Kathryn McDonald, J.
In a delinquency case in which the respondent is charged with violation of section 265.05 of the Penal Law prohibiting possession of a “dangerous knife” by person under the age of 16, the respondent raises several constitutional challenges to the statute. She argues first that the knife removed from her person is not in fact a “dangerous knife” within the meaning of the statute. She then raises four constitutional arguments: first, that the statute is void for vagueness; second, that due process is denied by the statute’s failure to provide for a dispositional hearing; third, that equal protection of the law is violated by the different statutory provisions governing possession of dangerous knives by persons 16 and over and children under 16; and, finally, that the prohibition against a. child’s possession of a dangerous knife constitutes cruel and unusual punishment in that it penalizes the child on the basis of her status of minority. Both counsel submitted memoranda of law on the constitutional issues. The Attorney-General has declined to intervene. For the reasons set out below, the court is reluctantly compelled to conclude that that portion of the statute under which respondent is charged is impermissibly vague, and that the petition must therefore be dismissed.
The facts of this case were established in the uncontroverted testimony of the arresting officer, who was the only witness at trial. While on duty as a transit patrolman, at about four o’clock in the afternoon of August 9, 1981, Officer Diana observed respondent, Alicia P., and a male youth in the public area of the subway station located at Eighth Avenue and 34th Street. No one else was in the immediate vicinity. Officer Diana testified that he lost sight of the two youths momentarily, then encountered the boy alone on a southbound local subway platform, and arrested him for possession of a knife. Upon finding this respondent on an express platform, seeking to question her about the boy, Officer Diana observed one half to one inch of a wooden handle protruding from her shirt, and a bulge beneath the shirt. Respondent made no gestures and did not speak before Officer Diana grabbed her arm and re *328 moved the protruding object, which he described as a kitchen knife, from her waistband. The knife, petitioner’s Exhibit 1 in evidence, is an ordinary, unmodified kitchen knife, with a one-sided blade six inches long, a sharp, uncentered point, and a wooden handle. Not in evidence and not vouchered, according to Officer Diana, was a plastic wrapping, similar to a dry cleaner’s plastic, which was wrapped around the blade.
Turning from the uncontested facts to the legal arguments, two of respondent’s constitutional challenges may be disposed of summarily. First, as to the alleged deprivation of due process, the statute has been consistently interpreted as incorporating the requirements of article 7 of the Family Court Act, so that a finding of a violation of section 265.05 of the Penal Law is simply the predicate to a dispositional hearing pursuant to sections 731 and 746 of the Family Court Act. (See Matter of Marcus V., 86 Misc 2d 748; Matter of Don R.B., 66 Misc 2d 279; Matter of Thomas F., 85 Misc 2d 791.) This court finds no constitutional impediments when the total statutory scheme is so construed. Alicia P., like any other respondent charged with being a juvenile delinquent, would not be so adjudged until a dispositional hearing establishes, by a preponderance of the evidence, that she is in need of supervision, treatment, or confinement, according to the requirements of sections 731 and 745 of the Family Court Act.
Respondent’s argument concerning the cruel and unusual punishment allegedly imposed on a child merely because she has the status of childhood requires little analysis. The Legislature has legitimately made numerous “rights” unavailable to minors: to vote, to marry, to consume alcoholic beverages, and to drive automobiles, to name only the most obvious. The prohibitions and penalties of youth are hardly cruel and anything but unusual. They are, indeed, almost universal (and of course, short lived). The court’s attention is more seriously engaged by respondent’s remaining two arguments concerning vagueness and equal protection, which are so intertwined as to become one somewhat complex whole.
*329 After arguing that the knife taken from her is not “dangerous” as that term is used in section 265.05 of the Penal Law, respondent also argues that the term itself is so vague as to make it impossible to know whether this knife may or may not be so described. She argues, too, that the failure of the statute to require a showing of her intent to use the knife unlawfully against another, as explicitly required in the adult penal laws pertaining to possession of “dangerous knives” (Penal Law, § 265.01) is a denial of equal protection of law. This court views the questions of definition and intent as inextricably linked, because in reality any sharp knife is dangerous, if used with intent to do harm. It may be that without reaching the question of vagueness, respondent is correct in her assertion that her knife falls outside the prohibitions of section 265.05 of the Penal Law. But the case law is at least uncertain.
The Court of Appeals ruled in People v Rosello (29 NY2d 838) and Matter of Ricci S. (34 NY2d 775) that hunting knives with six-inch blades were not “dangerous”. The Appellate Division, First Department, decided in Matter of Chidi N. (65 AD2d 688) that a folding knife with a four-inch blade was also not “dangerous”. Since it cannot be argued that the knife in this case is inherently more dangerous than a hunting knife with the same size blade, it is probable that this petition should be dismissed. However, the Assistant Corporation Counsel argues that the circumstances surrounding respondent’s possession — concealed on her person, and carried in the subway in the company of another teenager who carried a similar object — make this knife more “dangerous” than ánother of comparable size and design. The difficulty in assessing that argument lies in the absence of articulated standards, either in the statutes or the case law, governing “dangerous knives”.
Although no definition of the term is provided in the Penal Law (despite the fact that dozens of other terms are defined in Penal Law, §§ 10.00, 265.00) and the descriptions in the case law are not explicit, patterns may be discerned which link the knives in question to concepts of intent or use. It should be emphasized that the statutes governing adults’ possession of “dangerous knives” do not *330 make possession alone unlawful; it is only possession of a dangerous knife with intent to use it unlawfully against another that is a violation of section 265.01 of the Penal Law. That intent is presumed from possession (pursuant to Penal Law, § 265.15, subd 4) but the presumption is rebut-table. (People v Adamkiecewicz, 298 NY 176.) In the case law, distinctions between “dangerous” and nondangerous knives appear to rest on the conspicuous intent to use the knives unlawfully. Thus, although a hunting knife with a six-inch blade is not a “dangerous knife” because not modified for use primarily as a weapon (People v Rosello, supra), a household carving knife is — when used to commit a homicide (People v Caruso, 249 NY 302). Since a saber or sword-knife is designed for use solely as a weapon, its designation as a dangerous knife is clear (Matter of Robert T., 54 AD2d 581, mot for lv to app den 40 NY2d 807). Also obviously “dangerous” is a knife modified in such a way as to become a makeshift but serviceable dagger (Matter of Daniel B., Family Ct, NY County, 1981). The design of both swords and daggers offers evidence of their intended combative use. Not so clear is the ruling in People v Kinred (18 AD2d 1086) that a 15- to 18-inch knife (with length of blade unspecified) is “dangerous”, but it may well be that any knife of that length is properly deemed a potential weapon.
In contrast, in Matter of Chidi N. (supra) and Matter of Ricci S. (supra) where the design of the knives (a folding knife and hunting knife, respectively) provided no evidence of unlawful use or intended use, the courts have ruled the knives not “dangerous”.
The definitional problem was well summarized by the Federal District Court in New Jersey, while reviewing a petition for a writ of habeas corpus following the defendant’s conviction for possession of a “dangerous knife”. The court pondered:
“What is a ‘dangerous knife?’ How many inches must it be? What knives are permitted, and what knives are outlawed by this statute? Under what circumstances is it permissible to possess a ‘boy scout knife’ and when does such possession become criminal? * * *
*331 “The statute * * * does not purport to outlaw the carrying of all knives under all circumstances, only those that are ‘dangerous’. If the definition of ‘dangerous’ is so broad as to encompass any knife capable of inflicting a dangerous wound, and if no element of the intent of the possessor is factored into the equation, then it becomes impossible for ordinary citizens to conform their conduct to the requirement of the statute. No one can know what knives the law permits, on the one hand, or condemns on the other.” (United States ex rel. Ebron v Attorney General of State of N. J., 377 F Supp 396, 398; emphasis in original.)
In People v Munoz (9 NY2d 51) the Court of Appeals was similarly critical of an Administrative Code of the City of New York provision banning possession by minors (without reference to intent) of “any knife or sharp pointed or edged instrument which may be used for cutting or puncturing.” (Administrative Code, § 436-5.2.) The court found the problem one of uncertainty as to what items were included in the description, pointing out (p 56) that “under opportune circumstances, any device might be used to maim or kill”. After speculating as to whether such items as knitting needles, penknives, and safety razors were included in the statute’s definition, the court concluded (supra, p 57) that “[t]he definition has no boundary excluding from the section’s coverage the most commonly used and innocently possessed devices of everyday life.” The statute was held void for vagueness.
To restate the problem in its essential terms, is it not true that all knives, like all “sharp pointed or edged instruments which may be used for cutting or puncturing”, are “dangerous” when used with skill or strength? Had Mr. Caruso, grief stricken at the death of his daughter, attacked the child’s doctor with Ricci S.’s hunting knife, instead of his own kitchen carving knife, would Ricci’s knife have been held “not dangerous”? Would not the four-inch blade belonging to Chidi N. have produced the same result in Mr. Caruso’s hands? When the knife in question is carried by an adult, or youth 16 or older, the law requires proof of intent before making possession of it unlawful. In truth, the danger to society arises not from the object held, but from the bearer’s intent, yet the statutory scheme does *332 not require a showing of intent before holding children under 16 liable on a quasi-criminal charge.
The Assistant Corporation Counsel argues that the circumstances of a particular possession save the statute from being unconstitutional — and innocent children from being arrested. That argument must be rejected, for “If on its face the challenged provision is repugnant to the due process clause, specification of details of the offense intended to be charged would not serve to validate it. * * * It is the statute, not the accusation under it, that prescribes the rule to govern conduct and warns against transgression.” (Lanzetta v New Jersey, 306 US 451, 453.) The essential failings of a vague penal statute are not only its failure to give notice to the public as to what is forbidden, but also its encouragement of arbitrary and erratic arrests and convictions. The courts have flatly rejected the broad powers granted the police by such vaguely worded (but doubtless well-intentioned) statutes. In striking down a Florida vagrancy law, the Supreme Court noted that, “the implicit presumption in these generalized vagrancy standards — that crime is being nipped in the bud — is too extravagant to deserve extended treatment.” (Papachristou v City of Jacksonville, 405 US 156, 171.) In a similar vein, the Court of Appeals concluded in Munoz (supra, p 58) that, “The purpose to be served by this enactment could only be to enable prosecution of those whom the police believe to be bad boys or girls. That does not warrant conviction of a criminal or quasi-criminal offense.” Similarly, the police net cast by section 265.05 of the Penal Law is far too broad. Once it is conceded that any moderately sharp knife is “dangerous” there is nothing to prevent the arrest of any child carrying such a knife. It is common knowledge, as the Law Guardian points out, that Boy and Girl Scouts are encouraged to purchase sharp, pointed knives as part of their scouting equipment. The scout is then subject to arrest and prosecution as a juvenile delinquent. A court would be justified in making a finding of fact against the youngster. Only at the dispositional hearing, after a finding that the child did not need supervision, confinement, or treatment, would he be freed from the jurisdiction of the court. Aside from the misuse of police *333 and judicial resources to process such a case, the State’s intervention in the child’s life, even though short of a final determination of delinquency, is substantial and coercive. The constitutional protections are not satisfied by the child’s vindication at the dispositional or appellate phase. The child is entitled to the protection of narrowly drawn statute that puts himself and the police officer adequately on notice of the prescribed behavior, so that the initial arrest itself may be avoided.
The solution proffered by the Assistant Corporation Counsel for such overly broad enforcement of the statute is that the police and courts should, in effect, add a requirement of unlawful intent, so as to make the knife in question truly dangerous. That solution was applied by the New Jersey State appellate courts in the Ebron case and held sufficient by the Federal court to save the statute from a finding of unconstitutional vagueness. It may not be applied to the New York statute, however, in light of the extensive legislative history indicating a deliberate rejection of the intent requirement for juveniles. At least as far back as the 1909 Penal Law, New York Legislatures have consistently enacted and re-enacted a statutory scheme that fails to incorporate a requirement of unlawful intent for juveniles held liable as delinquents for possessing “dangerous knives”. (See Penal Law, former § 1897, subd 4 [1909]; Penal Law, former § 265.05, subd 4 [1967]; Penal Law, § 265.05.) At the same times, and with the same consistency, the Legislatures inserted a requirement of unlawful intent before adults were held criminally liable for possessing the same “dangerous knives”. (See Penal Law, former § 1897, subd 9 [1909]; Penal Law, former § 265.05, subd 9 [1967]; Penal Law, § 265.01, subd [2].) Where it is clear that the Legislatures’ omission of an explicit requirement of intent was not inadvertent but a deliberate choice, made, presumably, for some consideration of policy, the court may not simply &dd the language, as was done by the New Jersey courts in Ebron (377 F Supp 396, supra).
The only question remaining is whether it is not permissible for the Legislature to so choose, i.e., to treat children under 16 differently from adults so as to make *334 their possession alone, without intent, culpable. If the notice given juveniles were clear — if, for example, all knives of a specific design were banned — the Legislature’s decision to make possession by juveniles unlawful would be permissible. The legislative judgment that some potentially dangerous activities should not be made available to minors is a lawful exercise of its power. No one would contest the constitutional validity of making drivers’ licenses or alcohol unavailable to minors, although reasonable persons might debate the correct age for lifting the prohibitions. Since driving, particularly drunken driving, may result in death to the driver or innocent victims, the Legislature’s “discrimination” against children is clearly reasonable. Similarly, the compelling State interest in protecting the public is served by barring some inherently dangerous weapons, for example, firearms, to minors. (The cases cited by the Assistant Corporation Counsel as upholding the constitutionality of section 265.05 of the Penal Law against challenges based on vagueness involved just such items that are clearly within the statute’s specific prohibition against air guns [People v Nieke, 56 Misc 2d 363 (BB guns); Matter of Thomas F., 85 Misc 2d 791, supra (air guns)].) The statutory descriptions of these specific items, unlike “dangerous knives” give ready notice to children and adults of the prohibited actions, and are clearly not void for vagueness. The flaw in the statute’s distinctions as to children’s possession of “dangerous knives” is that the prohibition itself is so essentially vague that it can only be remedied by inserting a requirement of intent — and that, for reasons outlined above, this court is not free to do. The vagueness of the statute is inseparably linked to the absence of unlawful intent, and the legislation may not be reworded by this court to remedy the flaw.
Having found that that section of the statute referring to “dangerous knives” is void for vagueness, the court must dismiss the petition against Alicia P. However, in the interests of reaching all the issues of this case, the court rules that if the statutory and case law descriptions of “dangerous knives” were constitutionally sufficient, the petition would nevertheless be dismissed for failure of proof beyond a reasonable doubt that this knife is “danger *335 ous”. It is an ordinary kitchen knife, freely available to be purchased in stores by adults and children alike, not modified in any manner so as to make it a weapon more suitable for aggressive use and carried by a 15 year old who made no threatening gestures or attempts to use it against another.
For all the reasons stated in this decision, the petition against Alicia P. is dismissed.