■ In the Matter of ALRICK J., a Person Alleged to be a Juvenile Delinquent, Appellant. [871 NYS2d 95]—

Order of disposition, Family Court, Bronx County (Juan M. Merchan, J.), entered on or about November 28, 2007, which adjudicated appellant a juvenile delinquent, upon his admission that he had committed an act constituting unlawful possession of weapons by persons under 16, and imposed a conditional discharge for a period of 12 months, affirmed, without costs.

The petition charged appellant with acts that, if committed by an adult, would have constituted two counts of criminal pos-

session of a weapon in the fourth degree (Penal Law § 265.01 [1], [2]), menacing in the second degree (Penal Law § 120.14), menacing in the third degree (Penal Law § 120.15) and unlawful possession of weapons by a person under 16 years of age (Penal Law § 265.05). Rather than proceed to a fact-finding hearing, appellant admitted that he had committed the act alleged in count five of the petition charging unlawful possession of a weapon by a person under 16. As is clear from the plea allocution, the petition and a stipulation between the parties, the "dangerous knife" appellant admitted that he had possessed in a public park was a gravity knife.

We reject appellant's contention that Family Court improvidently exercised its discretion in imposing a conditional discharge rather than granting his request for an adjournment in contemplation of dismissal. Family Court certainly was not required to grant that request "merely because this was [appellant's] first brush with the law" (*Matter of Nikita P.*, 3 AD3d 499, 501 [2004] [internal quotation marks omitted]; *see also Matter of Rufino M.*, 168 AD2d 385, 386 [1990] [rejecting claim that an adjournment in contemplation of dismissal should have been granted and observing that "the fact that this was appellant's only contact with the law is not dispositive"]). Unquestionably, the possession of a gravity knife or any dangerous knife by a juvenile in a park is a serious matter. Thus, this case does not reduce to "an act of thoughtlessness committed by an adolescent fooling around with some friends" (*Matter of Justin Charles H.*, 9 AD3d 316, 317 [2004]). Rather, appellant "committed a type of misconduct that in and of itself supports the conclusion that a conditional release, at the very least, was appropriate" (*Matter of Nikita P.*, 3 AD3d at 500 [rejecting claim that an adjournment in contemplation of dismissal should have been granted where juvenile was found to have committed acts which, if committed by an adult, would have constituted the crime of attempted assault in the third degree]).

Moreover, as Family Court was aware, the recommendation of the Department of Probation was for probation, a more restrictive disposition than the conditional discharge Family Court imposed. Family Court expressly stated that the reason it was "not going for the ACD is the allegations are very serious." That observation by Family Court is entirely accurate. In essence, the sworn allegations of the petition charged appellant not only with possessing a "dangerous knife" in a park but with displaying the knife to the complainant and thrusting the knife at him, after having told the complainant that he could get his friends to "beat [him] up." The report of the Department of

Probation referred to both the complainant's sworn account of the foregoing allegations and the sworn statement of a police officer that he had recovered a gravity knife from appellant's person. Also before Family Court at the outset of the dispositional hearing were appellant's school records, court exhibit 1. Those records reveal that between September 4 and November 17 of the Fall 2007 semester, appellant was absent on eight days, and that during the prior academic year, appellant was late on 55 of the 186 days and absent on 14 days. This troublesome history of absences and tardiness also supports Family Court's determination that an adjournment in contemplation of dismissal was not an appropriate disposition.

The dissent is not persuasive. None of the cases it cites in which this Court concluded that an adjournment in contemplation of dismissal should have been granted involved the possession of a dangerous weapon. The serious nature of the criminal conduct that appellant admitted he had committed, possession of a gravity knife, cannot be questioned. Even though appellant also admitted possessing this dangerous knife in a public park, the dissent writes with considerable understatement that "the crime appellant admitted committing . . . is not to be condoned."

Instead of coming to grips with the seriousness of the criminal conduct appellant admitted that he had committed, the dissent emphasizes that appellant did not also admit the truth of other sworn allegations of the petition, i.e., that after threatening to have the complainant beaten up, appellant displayed the knife and thrust it at the complainant. Thus, the dissent contends that Family Court's decision to impose a conditional discharge—hardly an onerous disposition—"is deficient in that it is predicated upon sworn allegations that were never established at the Family Court proceeding." Apparently, the dissent is of the view that in determining the appropriate disposition, Family Court was required to ignore the allegations of even more serious criminal conduct by appellant. The dissent cites no authority for that proposition.

Ironically, however, the dissent does apparently credit and rely on at least a portion of appellant's version of the disputed facts when it states that "appellant neither assaulted nor injured anyone, *and he denied committing or attempting to commit any violent act*" (emphasis added). This ignores the conflicting allegations in the petition charging petitioner with thrusting the gravity knife at the complainant after threatening to get his friends to assault him. The dissent fails to explain why it is free to credit the appellant's unsworn claims made when he was

interviewed by the Probation Department but Family Court was required to discredit or ignore the complainant's sworn allegations.

Moreover, aspects of appellant's unsworn claims to the Probation Department strain credulity. Appellant claimed that he had been carrying the gravity knife in his book bag, after finding it in a park, when his friend threw a football at the complainant, causing the complainant's glasses to fall off. When the complainant approached appellant and his friend, appellant went on, his friend retrieved the knife from appellant's book bag, "pulled it out" on the complainant and then replaced it in the book bag after the complainant left. Thus, although appellant pinned the blame on his unapprehended friend, even appellant admitted that the complainant was physically threatened with the knife. On this account, it is not at all clear why appellant's friend would have known to go into appellant's book bag to get the gravity knife. Moreover, appellant's claim that after his friend threatened the complainant with the knife, appellant put it back in the book bag, is at odds with the affidavit of the arresting officer, which was before Family Court and also summarized in the probation report, and stated that the officer recovered the knife from appellant's person. Finally, appellant's version of the facts requires the conclusion that the complainant for some reason falsely inculpated appellant while falsely absolving the person who actually brandished and threatened him with a knife. Certainly, the Probation Department, which recommended probation, did not state that it credited appellant's claims. Nevertheless, and despite the "the-dog-ate-my-homework" quality of appellant's claims, the dissent faults Family Court for not disregarding the complainant's account of what had happened.

The dissent also emphasizes that Family Court should have granted appellant an adjournment in contemplation of dismissal because "[t]here were no further incidents during the four months between this incident and the dispositional hearing" and appellant "insisted that he would never do anything like this again." But a Family Court judge surely is not required to be impressed by, and impose a less restrictive disposition on account of, the mere fact that a respondent is not charged with committing another crime during the pendency of the case, let alone during a period of only four months. Similarly, although the dissent appears to accept and be impressed by appellant's "insiste[nce]," the dissent does not and cannot explain why the Family Court Judge in this case—the Judge before whom, unlike the dissenters, appellant physically appeared—was required to accept and be impressed by it.

As we read the record, Family Court concluded neither that the complainant's allegations that appellant thrust the knife at him and threatened an assault were true nor that they were false. Rather, Family Court simply and sensibly recognized the possibility that these serious allegations were true in determining that appellant required supervision (Family Ct Act § 352.1 [1]) and that a conditional discharge was the least restrictive available alternative "consistent with the needs and best interests of the respondent and the need for protection of the community" (Family Ct Act § 352.2 [2]). This disposition was prudent for another reason. As Family Court undoubtedly knew, it was more than a possibility that the complainant was physically threatened by someone with a knife; even appellant conceded that this serious act had occurred. The only uncertainty was who did it.

Finally, the dissent is unfair to Family Court, and also falls into self-contradiction, with its repeated assertions that Family Court "rel[ied] exclusively on the nature of the crime" in denying an adjournment in contemplation of dismissal. This criticism of Family Court is contradicted by the dissent's position that Family Court also erred in relying on "sworn allegations that were never established at the Family Court proceeding." The criticism is unfair because Family Court expressly noted that appellant's school records were before it as exhibit 1. Given the enormous case loads and difficulties that Family Courts deal with day in and day out, it is hardly surprising that Family Court did not issue a written decision or elaborate at length on all the reasons for its dispositional determination. But the dissent cannot fairly assume either that Family Court did not consider appellant's troublesome school records or that Family Court did not make its determination after a thorough and reasoned review of all relevant facts and information before it (cf. People v Nazario, 253 AD2d 726 [1998]).

Given our conclusion that Family Court appropriately imposed a conditional discharge, we need not and do not address the presentment agency's contention that because Penal Law § 265.05 specifies that "[a] person who violates the provisions of this section *shall* be adjudged a juvenile delinquent" (emphasis added), Family Court was precluded from granting an adjournment in contemplation of dismissal as that procedure is permissible only prior to a finding of juvenile delinquency (Family Ct Act § 315.3 [1]; § 352.1 [1]). Concur—Andrias, J.P., Nardelli and McGuire, JJ.

Moskowitz and Renwick, JJ., dissent in a memorandum by Renwick, J., as follows: Family Court refused to adjourn the

proceeding in contemplation of dismissal solely because the allegations in the petition were "very serious." The majority finds that such exclusive reliance on the nature of the crime as alleged in the petition was proper. I dissent because, by relying exclusively on the nature of the crime as alleged in the petition, Family Court abdicated its responsibility to consider the needs and best interests of the juvenile, as well as the need for protection of the community, in determining the least restrictive available disposition (Family Ct Act § 352.2 [2]).

Preliminarily, it should be pointed out that Family Court's decision to adjudicate appellant a juvenile delinquent, rather than to adjourn the proceeding in contemplation of dismissal (ACD), is deficient in that it is predicated upon sworn allegations that were never established at the Family Court proceeding. Even if Family Court could have properly considered the allegations of the petition in denying ACD, it could not properly rely exclusively on the nature of the crime. A juvenile delinquency adjudication requires more than a determination that the juvenile committed a delinquent act. To avoid unnecessarily "brand[ing a child] as a juvenile delinquent" (*Matter of Justin Charles H.*, 9 AD3d 316, 317 [2004]), a preponderance of the evidence must also show that the juvenile needs supervision, treatment or confinement (Family Ct Act §§ 352.1, 350.3). In addition, the court must order "the least restrictive available alternative [disposition] which is consistent with the needs and best interests of the respondent and the need for protection of the community" (Family Ct Act § 352.2 [2] [a]; *see also* § 301.1; *cf.* § 353.6).

By permitting the nature of the crime to dictate the restrictiveness of the disposition, the majority ignores this mandate and seems to equate a juvenile proceeding with a criminal proceeding in which the predominant function of sentencing is not the defendant's needs and best interests but punishment. By relying exclusively on the nature of the crime, i.e., the community's need for protection, to dictate the restrictiveness of the disposition, the majority weakens the Family Court Act's mandate to consider the juvenile's needs and best interests as well, and to avoid unnecessarily "brand[ing a child] as a juvenile delinquent" (*Justin Charles H.*, 9 AD3d 316, 317 [2004], *supra*).

A proper review of all the relevant circumstances ineluctably leads to the conclusion that an ACD is "the least restrictive available alternative [disposition] consistent with the needs and the best interests of the respondent and the need for protection of the community." While the crime appellant admitted commit-

ting, possession of a dangerous knife, is not to be condoned, appellant neither assaulted nor injured anyone, and he denied committing or attempting to commit any violent act.

In addition, the record reflects that appellant comes from a stable home environment and had no prior history of criminality; that this incident was his first contact with the juvenile justice system; and that he had no record of getting into trouble at home, at school, or in the community. There were no further incidents during the four months between this incident and the dispositional hearing and no indication that appellant ever used drugs or alcohol or was affiliated with a gang. Appellant accepted full responsibility for his illegal possession of the gravity knife and insisted that he would never do anything like this again.

Although it is undisputed that appellant's possession of the knife was an isolated incident and that appellant receives adequate supervision by his parents, the majority makes much of appellant's poor record of school attendance. However, "the court could have, and should have, under the terms and conditions of an ACD, required the probation department to monitor appellant 'to assure that he attends school regularly' " (*Matter of Anthony M.*, 47 AD3d 434, 435 [2008], quoting *Justin Charles H.*, 9 AD3d at 317; *see* Family Ct Act § 315.3 [2]; Uniform Rules for Fam Ct [22 NYCRR] § 205.24 [b]). Indeed, this Court on numerous occasions has reversed an adjudication of juvenile delinquency and imposition of a conditional discharge or probation where, as here, the juvenile had no prior court contact, had no record of trouble at home or school, had no history of drug or alcohol abuse, and did not pose a threat to the community (*see Justin Charles H.*, 9 AD3d 316 [2004], *supra* [error to impose 12-month conditional discharge instead of an ACD, where juvenile committed an act that, if committed by an adult, would constitute the crime of reckless endangerment in the second degree, had not previously been in trouble at home or in school, his home was stable, and the underlying incident did not involve any intentional or malicious conduct]; *Matter of Anthony M.*, [error to impose nine-month conditional discharge instead of an ACD, where juvenile committed an act that, if committed by an adult, would constitute the crime of petit larceny, took full responsibility for the theft, came from a stable home environment, had no prior court contact, had no record of getting into trouble at home, at school, or in the community, and there was no indication that appellant ever used drugs or alcohol or was affiliated with a gang]; *Matter of Joel J.*, 33 AD3d 344 [2006] [error to impose 12-month placement instead of an ACD,

where juvenile committed an act that, if committed by an adult, would constitute the crime of criminal possession of marijuana in the fifth degree, had no prior record, posed no threat to the community, and made significant progress between arrest and disposition]; *Matter of Letisha D.*, 14 AD3d 455 [2005] [error to impose 12-month probation instead of an ACD, where juvenile committed an act that, if committed by an adult, would constitute the crime of false impersonation, had no prior court record, had good school attendance and a stable and supportive family, obeyed her curfew, expressed remorse for her conduct, and insisted she learned her lesson]).

Finally, we reject the presentment agency's argument that Family Court had no discretion in determining whether to adjudicate appellant a juvenile delinquent once he admitted violating Penal Law § 265.05. That section, entitled "Unlawful possession of weapons by persons under sixteen," is the only Penal Law section specifically relating to juveniles. Although generally a person cannot be adjudicated a juvenile delinquent unless that person has committed an act that would have constituted a crime if performed by an adult (Family Ct Act § 301.2 [1]), section 265.05 reflects a specific legislative intent to proscribe certain conduct when engaged in by juveniles, and by defining such conduct as juvenile delinquency the Legislature has provided Family Court with appropriate jurisdiction (Family Ct Act § 302.1; *Matter of Thomas RR.*, 64 NY2d 1062, 1063-1064 [1985]).

After setting forth the elements of the offense the statute provides that "[a] person who violates the provisions of this section shall be adjudged a juvenile delinquent." (Penal Law § 265.05.) The presentment agency argues that the above language removes any discretion to impose an ACD instead of adjudicating such person a juvenile delinquent. That argument, however, is at odds with Family Court Act § 352.1 (2), which requires Family Court to dismiss a case, or order an ACD (Family Ct Act § 315.3 [1]), even after a finding that the juvenile committed a delinquent act, if, upon conclusion of the dispositional hearing, it determines that the juvenile does not require supervision, treatment or confinement. Considering the scheme and rehabilitative purposes of the Family Court Act, it is not apparent why Family Court should be stripped of its discretion to dismiss a case in the single instance of a Penal Law § 265.05 violation. Under the presentment agency's interpretation, juveniles found to have committed offenses that are more serious than Penal Law § 265.05 would remain eligible, going into the dispositional hearing, to receive ACDs, or to have their

cases dismissed as further court involvement is not required, whereas a more deserving juvenile found to have violated section 265.05 would be barred from receiving such treatment. This is irrational.

"[A] statute should be given a rational interpretation consistent with achieving its purpose and with justice and common sense" (McKinney's Cons Laws of NY, Book 1, Statutes § 96, Comment, at 207) and a literal construction is to be avoided when it results in objectionable consequences, unreasonableness, absurdity, hardship, or injustice (McKinney's Cons Laws of NY, Book 1, Statutes §§ 141, 143, 145, 146). Further, since Penal Law § 265.05 applies to juvenile proceedings it must be construed together with the Family Court Act such that the two statutes are construed as "though forming part of the same statute" (Statutes § 221 [b]) and should be "applied harmoniously and consistently" (*id.*, Comment, at 378). Significantly, although not binding on this Court, several courts have interpreted Penal Law § 265.05 as incorporating the Family Court Act and have found that a violation of that section is simply the predicate for a dispositional hearing (*see e.g. Matter of Paul R.*, 151 Misc 2d 790 [Fam Ct, Kings County 1991]; *Matter of Alicia P.*, 112 Misc 2d 326, 328 [Fam Ct, NY County 1982]. We concur. The words, "shall be adjud[icated] a juvenile delinquent," in section 265.05, cannot be read literally. It is at the conclusion of the dispositional hearing, not upon admission of guilt, that the court decides whether a delinquency adjudication is necessary (Family Ct Act § 352.1 [1]), and, if so, what type of disposition strikes the proper balance between the juvenile's best interests and the community's need for protection (Family Ct Act § 352.2 [2]).

For the foregoing reasons, it is clear that Family Court improvidently exercised its discretion in finding appellant to be a juvenile delinquent and not adjourning the proceeding in contemplation of dismissal as the least restrictive alternative consistent with appellant's needs and best interests and the community's need for protection. Thus, the order of the Family Court, which adjudicated appellant a juvenile delinquent and imposed a conditional discharge for a period of 12 months, should be vacated and the matter remanded with the direction to order an adjournment in contemplation of dismissal pursuant to Family Court Act § 315.3 (1).