(April 14, 2011)

■ In the Matter of JAHLONI G., a Person Alleged to be a Juvenile Delinquent, Appellant. [921 NYS2d 49]—

Order of disposition, Family Court, Bronx County (Robert R. Reed, J., at fact-finding determination; Nancy M. Bannon, J., at disposition), entered on or about March 4, 2010, which adjudicated appellant a juvenile delinquent upon a fact-finding determination that he committed an act that, if committed by an adult, would constitute the crime of possession of an imitation firearm, and placed him on probation for a period of 12 months, reversed, on the facts and in the exercise of discretion, without costs, the finding of juvenile delinquency and placement on probation vacated, and the matter remanded with the direction to order an adjournment in contemplation of dismissal pursuant to Family Court Act § 315.3 (1).

According to the two police officers who testified at the suppression hearing and trial, Officers Sammarco and Budney, they

received a radio run that a few young men with a firearm were a few blocks away and that one of them was black, wearing a blue shirt, blue jeans and sneakers. They saw three young men, one of whom (not appellant) fit the description, running in front of their car and away from bystanders. The officers yelled, "Stop!" after bystanders yelled, "That's them!" All three stopped. The officers first searched the one who fit the description and found nothing. Then Sammarco testified that they searched appellant, who had a sweatshirt over his arm, found something that looked like a broken nine millimeter Smith and Wesson "gun" wrapped in his sweatshirt and cuffed the three young men and placed them on the ground. Officer Budney testified that he saw the gun sticking out of the sweatshirt. Over objection, the officers were allowed to testify that bystanders said the young men were pointing the gun and passing it around. Although Officer Sammarco testified at the suppression hearing that he recovered the toy gun from appellant, he equivocated when reminded that he testified otherwise at a preliminary hearing. He agreed that he might have told others, including appellant's mother, that he did not recover the gun from appellant. He also averred that he was unable to obtain the names of any witnesses who claimed to have seen all of the boys handling the gun. Officer Budney testified similarly, stating that there was no need to interview witnesses.

A witness to the arrest, Sharona Casterlow, who was employed by the New York City Department of Education in the medical office at PS 111 and was in charge of dismissal, testified that she observed from about eight feet away that the gun was retrieved from an olive green jacket taken from one of the other boys. She recognized appellant because he came to her school to pick up his younger siblings and a cousin at dismissal time. She described the boy that the police took the firearm from as wearing a royal blue polo shirt and blue jeans. She did not know his name. She also stated that none of the bystanders rushed over to say "That's them." Victoria Gamble, appellant's mother, testified that she went to the precinct and spoke to Officer Sammarco and asked him if her son had the gun. She stated that the officer said, "Let me see," left and came back and told her that her son did not have the gun, another juvenile did. She said that was all she wanted to know.

The court stated that it believed the officers. However, the court discounted the testimony of Ms. Casterlow because she said she did not see people jumping up and down or hear anyone say "That's them," and because she could not have been eight feet away when the police officers were arresting suspects. The

court also discounted the testimony of appellant's mother because she had reason to protect her son.

Although the issue is close, we do not question the finding that the police had reasonable suspicion to support a stop and frisk of the boys. The police had received a radio message stating that there were a few males with a firearm, one wearing a blue shirt, blue jeans and sneakers, and it appears that bystanders pointed to the boys and said, "That's them." Assuming the truth of that evidence, there was a sufficient basis for the frisk and subsequent arrest (see People v Herold, 282 AD2d 1, 6-7 [2001], lv denied 97 NY2d 682 [2001]). Nor was appellant deprived of the effective assistance of counsel or of due process by his counsel's failure to seek to reopen the suppression hearing based on the testimony at the fact-finding hearing. The evidence could not have affected the suppression ruling.

However, the police officers' testimony at the fact-finding hearing that unnamed bystanders told them that the boys had been passing the gun around and pointing it at persons outside the school building, was clearly inadmissible hearsay and should not have been admitted. These statements unlike the res gestae statement, "That's them," were not excited utterances. Further, the court's complete rejection of Ms. Casterlow's and appellant's mother's testimony that the gun was not retrieved from appellant appears to have been arbitrary. The police officers testified from memory, and their testimony regarding retrieval of the toy gun was not completely consistent. They also saw no need to obtain the names of any of the bystanders who supposedly told them what the boys had been doing with the toys before they were apprehended; such evidence might have corroborated the hearsay testimony that the police officers proffered.

Because appellant was briefly a joint possessor of the broken toy gun, which possession violated Administrative Code of the City of New York § 10-131 (g) (1), it is not appropriate to dismiss the petition entirely. However, the testimony of the officers that they obtained the toy from appellant was unreliable. In view of appellant's very limited role in the incident and lack of a prior record, any imposition of a supervised adjournment in contemplation of dismissal, which is the "least restrictive available alternative" (Family Ct Act § 352.2 [2] [a]), would adequately serve the needs of appellant and society. Concur—Acosta, Freedman and Abdus-Salaam, JJ.

Gonzalez, P.J., and Sweeny, J., dissent in part in a memorandum by Sweeny, J., as follows: I agree with the majority that the court properly denied appellant's motion to suppress the imita-

tion pistol, although I do not agree that it is a "close" question. The police had, at the very least, the requisite reasonable suspicion to support a stop and frisk of appellant. The officers received a radio message that reported several males with a firearm and provided a description of one of the suspects. Upon arriving at the specified location moments later, they saw three young men running, one of whom fit the description transmitted to them by the police dispatcher. Pursuant to the common-law right of inquiry, the police properly directed the group, which included appellant, to stop. At that moment, bystanders in the area excitedly pointed at the youths, exclaimed, "That's them!" and told the police the youths had been passing around a handgun and pointing it at other people. At this point, the information possessed by the police was far beyond an uncorroborated anonymous tip (see People v Herold, 282 AD2d 1, 6-7 [2001], lv denied 97 NY2d 682 [2001]; compare Florida v J.L., 529 US 266 [2000]), and it warranted a frisk for weapons. The police observed the excited demeanor of the bystanders (see People v Govantes, 297 AD2d 551, 552 [2002], lv denied 99 NY2d 558 [2002]), who were clearly reporting what they had just observed (see People v Johnson, 46 AD3d 415, 416 [2007], lv denied 10 NY3d 812 [2008]).

Moreover, appellant was not deprived of the effective assistance of counsel or of due process by his counsel's failure to seek to reopen the suppression hearing, or the court's failure to do so sua sponte, based on evidence elicited at the fact-finding hearing. The allegedly inconsistent evidence could not have affected the suppression ruling (see People v Clark, 88 NY2d 552, 555-556 [1996]; People v Logan, 58 AD3d 439, 440 [2009], lv denied 12 NY3d 926 [2009]).

The majority would reverse the Family Court's decision on the facts and in the exercise of discretion, vacate the finding of juvenile delinquency and placement on probation and remand the matter with the direction to order an adjournment in contemplation of dismissal (ACD) pursuant to Family Court Act § 315.3 (1). On the basis of the record before this Court, I cannot agree.

Initially, despite the majority's argument to the contrary, there is no question that the underlying case was proven beyond a reasonable doubt. The Family Court, which had appellant before it, conducted a suppression hearing and a fact-finding hearing. It had a full opportunity to weigh all the evidence and the credibility of the witnesses. The evidence unequivocally revealed that a group of individuals, one of whom was appellant, were passing between each other what clearly

appeared to be a handgun. Additionally, witnesses at the scene pointed out these individuals and advised the police that they were pointing the gun at persons outside a school building. All of this occurred in an area where a number of schools were located, and was seen by students, parents and teachers during dismissal time when a significant number of people were on the street. This was not an "act of thoughtlessness" while appellant was "fooling around with some friends," which might, under other circumstances, justify an ACD (*cf. Matter of Israel M.*, 57 AD3d 274, 276 [2008]; *Matter of Justin Charles H.*, 9 AD3d 316, 317 [2004]). These actions created the potential for injury to both bystanders and police and the disposition was appropriate (*see Matter of Alrick J.*, 58 AD3d 457 [2009] [possession of a gravity knife in a public park was a serious matter and Family Court appropriately imposed a conditional discharge]). The majority's criticism of the testimony and the trial court's findings based on that testimony is, on this record, unwarranted. While there was some inconsistent testimony by the police witnesses, the court, which had the full opportunity to observe all the witnesses, credited their testimony. Additionally, the fact that it discredited some of the civilian witnesses' testimony cannot be characterized as "arbitrary." It has long been held that the credibility of the presentment agency's witnesses is primarily an issue to be determined by the trier of fact, who saw and heard the witnesses (*see People v Hill*, 176 AD2d 755, 755 [1991], *lv denied* 79 NY2d 858 [1992]). Its determination should be accorded great weight on appeal and should not be disturbed unless clearly unsupported by the record (*see People v Garafolo*, 44 AD2d 86, 88 [1974]).

Here, the fact-finding determination was based on legally sufficient evidence and was not against the weight of the evidence. There is no basis for disturbing the court's determinations regarding credibility, and the inconsistencies in the witnesses' testimony do not warrant a different conclusion (*Matter of Jasmine H.*, 44 AD3d 303, 304 [2007]).

Moreover, it should be noted that appellant did not ask the Family Court to grant an ACD, and thus, this issue was not preserved for our review (*see Matter of Derrick H.*, 80 AD3d 468, 469 [2011]). Although not dispositive, such a request would have put the issue before both the Family Court and this Court for a full examination of its merits. Nevertheless, the facts of this case do not lend themselves to the disposition suggested by the majority. Indeed, in those cases where we have found an ACD to be "the least restrictive available alternative," those appellants' actions did not pose a threat to the community (*see*

*Israel M.*, 57 AD3d at 276; *Matter of Joel J.*, 33 AD3d 344 [2006]). The same cannot be said in this case.

As a result, the Family Court acted within its discretion and I see no reason to disturb its findings or disposition.